

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00115-CR

_____


THE STATE OF TEXAS, Appellant

V.

JORGE LOUIS VERDE, Appellee


On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-11-23985


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

"For want of a nail the kingdom was lost."  That summary of an old proverb[1] is particularly apt to the cases before us involving Jorge Louis Verde.  Verde might have his community supervision revoked in eight cases[2] because of contraband found in his house.  The search that resulted in the discovery of the contraband was based on a warrant, which, in turn, was issued based on an affidavit by Detective Shane Stone.  The trial court has now ordered the contraband suppressed based on its findings that Stone's affidavit deliberately misled the warrant-issuing judge[3] by omitting key information.  We agree.  We affirm the trial court's ruling because (1) the trial court did not err in granting Verde a suppression hearing, (2) a *Franks*[4] violation can be based on an omission of facts in a warrant affidavit, and (3) the trial court did not err in suppressing the evidence.

---

[1]In that proverb, the lack of a nail caused a key horse to throw a shoe, thus setting off a chain of events ending in disaster.  Because his horse threw a shoe, the rider of that horse was lost to his side, resulting, ultimately, in the loss of a key battle in defense of the kingdom.

[2]Verde was on community supervision in eight cases.  Based on statements made by the State, it appears that drugs and a weapon were found in the search of Verde's house.  The trial court's suppression of that contraband effectively ended the State's attempt to adjudicate and revoke Verde's community supervision on all eight cases.  This opinion addresses the merits of the State's appeal of the suppression ruling; seven companion cases are issued of even date herewith.

[3]The judge of the 336th Judicial District Court signed the search warrant; however, she recused herself, and an appointed district judge heard and ruled on the motion to suppress.  The appointed judge found that a deliberate or reckless falsity in the affidavit invalidated the search warrant and, thus, granted Verde's motion to suppress the evidence found through the execution of the warrant.

[4]*See Franks v. Delaware*, 438 U.S. 154 (1978).

The objections to the warrant affidavit's contents[5] center on two main points. The affidavit affirmatively misrepresented that Verde "could not identify" to Stone the person from whom he purchased the trailer, yet the trial court found, based on evidence adduced at the suppression hearing, that Verde called Laurenzio Soto, the seller, in the presence of Stone at the time of the trailer inspection and offered to have him talk with Stone. The affidavit also omitted the detail that the theft report had been made in 2001, eleven years before Stone's encounter with Verde and eight years before Verde purchased the trailer, although the affidavit stressed the allegation that Verde failed to explain the reason Verde had waited three years to seek the trailer's registration.

---

[5]Stone's affidavit made these assertions:
- He met Verde for purposes of inspecting a trailer;
- The trailer did not have the appropriate Vehicle Identification Number markings: the "public VIN number had been removed";
- "[A] hidden VIN was located" in a location known only to manufacturers and law enforcement;
- The VIN was matched to a report of a 2000 Big Tex trailer reported stolen in Irving, Texas;
- Stone noted fresh paint, new flooring, and a new hitch on the bumper jack; per Stone's training and experience, suspects commonly alter the appearance of stolen trailers with such techniques;
- Stone said he questioned Verde, who admitted that "he owned the trailer for the past three 3 [sic] years and bought it from another Hispanic male, who he could not identify. Verde admitted that he has not registered it since he bought it";
- Stone's training and experience were that suspects commonly hold stolen property for several years to cool off or purge title questions and then present a trailer for registration, and "Verde did not give a plausible explanation as to why he waited [three years to register the trailer]";
- Verde acknowledged to Stone he bought another trailer from the same person as the stolen trailer, this second trailer was at Verde's home;
- Stone obtained a report from Irving Police showing a trailer and other equipment had been stolen - one trailer and other equipment having been stolen were "indicative of a larger theft and high likelihood that several people could be involved in organized crime";
- Stone drove by Verde's residence and saw another trailer, and he believed it "could be stolen as well";
- "Also a two car garage (common workshop) is observed near the scene and your Affiant believes that this could be the location where the stolen trailer was painted, the Mylar and Decals where [sic] removed and necessary tools to alter the appearance of the trailer. [sic] This location could hold valuable evidence need[ed] to support the State's Prosecution efforts";
- Stone "talked to Fannin County Sheriff's investigators who had several documented cases involving Jorge Louis Verde within the last two years and documents show Verde is currently on Felony Probation for Cocaine Possession. [Stone] knows from past experience and training that drug dealers commonly buy, sale [sic] and trade in stolen property and for other illegal contraband."

3

The events leading to this appeal began June 7, 2012. Verde had a trailer he planned to sell and needed to register it. He contacted Stone of the Paris Police Department; Stone was also part of a regional automobile task force that covered several counties.[6] Verde met Stone and his partner, Detective David Rowton, in the parking lot of the Walmart in Bonham. Inspections were a routine part of Stone's job. Stone testified that, when a person is arranging to have a trailer inspected, the task force asks the person to produce documentation to support ownership. Verde's production of a bill of sale for his trailer was one of Verde's chief lines of attack during the suppression hearing. Stone's affidavit for the search warrant made no mention of whether a bill of sale was produced; but, at the hearing, Stone testified, "I don't recall [what documentation Verde brought to the inspection to prove ownership,] but it seemed like it was a bill of sale. I don't remember exactly, but it seems like he did have a bill of sale." Stone could not account for the whereabouts of the bill of sale. He could not recall if he had taken it from Verde and returned it or if he had asked Verde to let him hold it. Stone remembered that Verde produced some document to evidence ownership, and Stone "recall[ed] that [Verde] did have some type of bill of sale. I don't recall what it was." Stone also stated that, when a party tenders stolen property to the impound lot, the task force usually gives them a receipt; he could not remember if he gave Verde a receipt in this case. Soto testified he sold two trailers—one of which was the trailer at issue—to Verde and gave him a bill of sale. The trial court found that Verde presented a bill of sale dated 2009.

---

[6]Verde lived in Leonard, Fannin County, Texas. All of the events concerning the affidavit and Stone's meeting with Verde occurred in Fannin County, although Stone and Rowton were law enforcement officers in nearby Paris, Lamar County, Texas.

Verde told Stone he had just painted the trailer and had added some floorboards, intending to sell the trailer to his boss. Stone could not locate the trailer's VIN in the spot where it should have been, but he found it in a location generally only known to manufacturers and law enforcement. Stone ran the VIN through a law enforcement data base and determined the Irving Police Department had a report that the trailer had been stolen in 2001.[7]

Also in dispute was whether Verde tried to put the detectives in contact with the person from whom he claimed to have purchased the trailer three years prior, Soto. According to questions asked by Verde's attorney at the suppression hearing, while meeting with Stone, Verde telephoned Soto and offered to let Stone speak to him. Stone was equivocal at the hearing. When asked if Verde had called a person he claimed was the seller and told Stone that man was willing to speak with Stone, Stone could not recall this happening; he said it could have happened but would not confirm that it did. He recalled Verde being on the telephone that day, and "he could have handed me the phone and say [sic], I'm calling him, I don't recall one way or the other." Stone acknowledged that Verde had at least given him the name of the seller. "He gave me the name, but I don't recall it." Stone admitted, "[W]e probably should have talked to Mr. -- I couldn't recall the name after the next day. When we left the parking lot there -- we probably should have [talked to the person Verde identified as the seller of the trailer]."

When asked why his affidavit said Verde could not identify the Hispanic male from whom he bought the trailer, Stone testified:

---

[7]Stone's affidavit does not state the year the theft was reported, leaving the reader to believe the theft may have been more recent. Based on the questions and answers at the hearing, it appears the theft was reported in 2001. There is an inference in the statements at the hearing that Stone's police report stated the theft was in 2001. Stone's report was discussed at various times in the hearing but was not admitted to the record into evidence.

That is a mistake on my part. It should have said that I could not remember the name. Who I could not identify. . . . it's just a typo, in my opinion. . . . I believe in my report I wrote that I could not remember who he said. It was a mistake and simply a mistake.

Verde was not under arrest at this point and complied with Stone's request to take the trailer to an impound lot at the Fannin County Sheriff's Office. After Verde left, Stone had a conversation with a member of law enforcement at the Sheriff's Office. This is another point where the events are cloudy. At the suppression hearing, Stone said a lieutenant with Fannin County, whose name he could not recall, recognized Verde.[8] That lieutenant "let us know that he had previous run-ins with Mr. Verde." When asked if Stone could elaborate on what run-ins the lieutenant had had, Stone replied, "Well, I don't know if he said 'run-ins,' but he'd said that they'd had -- run a search warrant on Mr. Verde and, I believe, they -- some money was taken from him."[9] Although not admitted into evidence, Stone's report was discussed during questioning. Stone acknowledged that his report notes "chief deputy"; in the hearing, he testified that he could not recall if he had asked the chief deputy or a lieutenant about Verde. Later testimony established that, at the time of these events, there was only one lieutenant with the Fannin County Sheriff's Office, and that lieutenant did not discuss Verde with Stone.

Stone did say, though, that he and Rowton met with Sergeant David Thompson of the Fannin County Sheriff's Office. Thompson confirmed that Stone and Rowton stopped by the Fannin County Sheriff's Office about once a week to check in or let local law enforcement know

---

[8]"He asked us if that was Verde. I was like, I wasn't sure. I said it sounds right, I'd have to look at my -- we normally enter into a database -- everybody that we look at trailers for."

[9]Later, there was reference to $60,000.00 having been seized from Verde; there was a suggestion that about one-half of this was eventually returned to Verde, but this matter was not discussed in detail.

the task force was operating in Fannin County.  Rowton did not remember speaking to any Fannin County law enforcement officers besides Thompson.  Thompson did not know of anyone with the sheriff's office seeing Verde drop off the trailer and then asking Stone and Rowton if that was Verde.  It was "purely coincidence . . . that they stopped in [Thompson's] office that day because they routinely do it."  When Stone and Rowton mentioned Verde's name, Thompson claimed to know about him.  Thompson said he discussed with Stone and Rowton the past dealings Thompson had with Verde and apparently conveyed his opinion that Verde was a major drug dealer.[10]

---

[10]
[Defense Attorney]:  Did you ever disclose to them that you felt as though Jorge Verde was a --  a known drug dealer?

[Witness]:  Yes.  He is.

[Defense Attorney]:  That you think he is a high-volume drug dealer, a big-time drug dealer?

[Witness]:  We believed him to be.

[Defense Attorney]:  Have you -- have you -- and did that -- was that information in any way conveyed to officers -- Detective Stone and Rowton?

[Witness]:  We discussed his past.  My past dealings with him, we discussed them.

[Defense Attorney]:  Okay.  And, in that regard, did that have anything to do with the thought of maybe going out to Mr. Verde's house and getting a search warrant?

[Witness]:  I couldn't testify to that.  That was ultimately their independent investigation on what move they wanted to make next.

[Defense Attorney]:  Okay.  So, you did not in any way -- all you did was told them about your prior dealings.

[Witness]:   My first-hand knowledge.

[Defense Attorney]:  And it was just purely coincident that you -- did you see Verde that day?

[Witness]:  Never did see him.

7

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). In reviewing a trial court's decision on a motion to suppress, we do not engage in our own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). If the trial court's decision is correct on any theory of law applicable to the case, we must affirm that decision. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

The suppression hearing held in this case is called a *Franks* hearing. *See Franks*, 438 U.S. 154.

> Under *Franks*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled by the Fourth Amendment to a hearing, on the defendant's request. This hearing is required only where the false statement is essential to the probable cause finding. If at the hearing the defendant establishes the allegation of perjury or reckless disregard by a preponderance of the evidence, the affidavit's false material is set aside. If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded

*Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) (citing *Franks*, 438 U.S. at 155–56).

We review a trial court's decision on a *Franks* suppression issue under the same standard that we review a probable-cause determination, a mixed standard of review: "We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor." *Johnson v.*

8

*State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Davis v. State*, 144 S.W.3d 192, 201 (Tex. App.—Fort Worth 2004, pet. ref'd). However, in a *Franks* hearing, the trial court may consider not only the probable cause affidavit, but also the evidence offered by the party moving to suppress because this attack on the sufficiency of the affidavit arises from claims that it contains false statements. *Franks*, 438 U.S. at 155–56; *Cates v. State*, 120 S.W.3d 352, 355 n.3 (Tex. Crim. App. 2003); *Davis*, 144 S.W.3d at 201. At a *Franks* hearing, the trial court is owed great deference as sole fact-finder and judge of the witnesses' credibility. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996).

*(1)    The Trial Court Did Not Err in Granting Verde a Suppression Hearing*

The State argues the threshold issue that Verde never showed himself entitled to a hearing on whether a *Franks* violation had occurred. To show himself entitled to a *Franks* hearing, a defendant must:

> 1.    Allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false. Allegations of negligence or innocent mistake are insufficient, and the allegations must be more than conclusory.
>
> 2.    Accompany these allegations with an offer of proof stating the supporting reasons. Affidavits or otherwise reliable statements of witnesses should be furnished. If not, the absence of written support of the allegations must be satisfactorily explained.[11]
>
> 3.    Show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is insufficient to support issuance of the warrant.

---

[11] "[N]othing in our law requires the defendant to include a sworn affidavit in making a preliminary showing under *Franks*." *Cates*, 120 S.W.3d at 356.

9

*Harris*, 227 S.W.3d at 85; *see also Franks*, 438 U.S. at 171; *Ramsey v. State*, 579 S.W.2d. 920, 922–23 (Tex. Crim. App. 1979). The State argues Verde never satisfied these steps and, thus, the trial court erred in conducting a hearing.

Verde filed a motion to suppress evidence and, later, a brief in support of that motion. He points out that the affidavit omitted information such as Verde having contacted the person from whom he bought the trailer and offering to let Stone speak to that person and that the trailer had been reported stolen as much as a decade earlier. Although Verde's brief does not use the words, it is fairly understood to argue that the omissions amounted to reckless disregard for the truth by affiant Stone. The brief claims the omissions were "material facts the magistrate should have been told so they could be considered, facts that appear to have been omitted to prevent the officer from hearing evidence that might undermine the course of action he wished to take."

While Verde's arguments are broader than necessary, he raised several points contesting the inadequacy of the affidavit to support the ensuing warrant and made sufficient arguments to support the trial courts finding that a *Franks* hearing was warranted. Additionally, when the State argued to the trial court that no *Franks* hearing should be held, the trial court stated, "If he doesn't call a witness, how is he going to make" a preliminary *Franks* showing. The court also said, "I would think he could proffer the evidence through testimony." *See Cox v. State*, 843 S.W.2d 750, 752 (Tex. App.—El Paso 1992, pet. ref'd) (decision on whether to conduct pretrial hearing on motion to challenge admissibility of evidence rests in sound discretion of trial court).

In *Harris*, the court found the first two prongs of the *Franks* preliminary showing were not met, so the defendant did not show himself entitled to a hearing. *Harris*, 227 S.W.3d at 85.

10

The court nonetheless considered evidence from the hearing to find that a *Franks* violation was not preserved for review. Similarly, in *Dancy v. State*, 728 S.W.2d 772, 781 (Tex. Crim. App. 1987), the court found the defendant failed to make his preliminary showing and was not entitled to a hearing, but noted that there was a hearing on the motion to suppress and then considered that evidence in finding Dancy failed to meet his *Franks* burden. We find no error in the trial court's conducting a hearing in this matter.

*(2)    A Franks Violation Can Be Based on an Omission of Facts in a Warrant Affidavit*

The State also argues that the Texas Court of Criminal Appeals has never explicitly ruled that omissions of facts or information can support a *Franks* claim. That argument overlooks the fact that, of Verde's two principal objections to Stone's affidavit, one—the statement that Verde could not identify his seller—is an affirmative misstatement and the other—failing to mention when Verde purchased the trailer—is an omission. The State directs us to *Brooks v. State*, 642 S.W.2d 791 (Tex. Crim. App. 1982), for the proposition that the Texas Court of Criminal Appeals "has refused to apply *Franks* when a defendant only complains of the omission[] of facts from an affidavit." The following is the context of the issue in *Brooks*:

> In grounds of error numbers ten, eleven and twelve appellant again attacks the affidavit supporting the search warrant for failure to disclose to the magistrate that the confidential informant relied on therein was paid by the police, had been convicted of criminal offenses, and had previously provided affiant with false information. The testimony of the affiant officer cited by appellant affirms his claim that the informant was paid but does not support the allegation that he had been convicted of criminal offenses and negates the claim that he had previously given affiant false information. Elsewhere in the record the officer affirmed that the informant had a criminal record. But it was not disclosed whether his record included convictions.

11

Appellant's reliance on *Franks*, supra, in this ground of error is misplaced. That case relates not to *omissions* of facts about an informant but only to *false statements* by the affiant which are made knowingly and intentionally or made in reckless disregard of the truth. Absent such a showing as would warrant a *Franks* hearing, this Court will not look beyond the four corners of the affidavit. *Ramsey v. State*, supra. Appellant has not demonstrated that any statement or omission in the instant affidavit was made knowingly, intentionally or with reckless disregard for the truth. *Compare Ellerbee v. State*, 631 S.W.2d 480 (Tex. Crim. App. 1982). Grounds of error numbers ten, eleven and twelve are overruled.

*Id.* at 796–97. This passage does not definitively state that omissions cannot support *Franks* violations. In fact, the Texas Court of Criminal Appeals subsequently took note of the above *Brooks* quotation:

This Court has indicated that we might not recognize application of *Franks* to omissions of fact. In *Brooks v. State*, 642 S.W.2d 791 (Tex. Crim. App. 1982), the defendant attacked the probable cause affidavit for its failure to disclose "that the confidential informant relied on therein was paid by the police, had been convicted of criminal offenses, and had previously provided affiant with false information." We did not extend a *Franks* analysis to appellant's claims . . . .

*Massey v. State*, 933 S.W.2d 141, 146 n.3 (Tex. Crim. App. 1996). The court went on to point out that the Fifth Circuit had recognized a *Franks* analysis applies to omissions:

While this Court has not recognized that a *Franks* analysis pertains to omissions as well as false statements, some federal courts have so held. *See United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (recognizing that allegations of material omissions to be treated essentially like claims of material misstatements). We need not decide today whether we will also recognize application of a *Franks*-like analysis to intentional and material omissions of fact in the warrant affidavit because appellant has failed to establish that the omissions were made intentionally or with a reckless disregard for the accuracy of the affidavit.

*Id.* (footnote omitted). Massey had claimed the questioned affidavit omitted the facts that two informants cited had criminal histories and were suspects in the instant murder and that the affiant detective had been unable to corroborate one of the informant's incriminating assertions

12

about Massey. *Id.* at 145. The Court of Criminal Appeals reviewed the record and found that it did not support the appellant's claim that the omissions were made intentionally or in reckless disregard for the truth. Several courts have extended the *Franks* analysis to omissions.[12]

Finally, we take note of language in an unpublished Court of Criminal Appeals opinion:

*Franks* requires that the defendant be granted a hearing to present evidence on the issue of whether a misrepresentation was knowingly and falsely made in a probable cause affidavit and whether it was material to the establishment of probable cause, such that any evidence derived from that search warrant should be suppressed. [*United States v. Martin*, 615 F.2d 318, 328 (Fifth Cir., 1980)] purports to extend that same analysis to the omission of material facts. If a defendant establishes by a preponderance of the evidence that in a probable cause affidavit, first, omissions of fact were made, and second, such omissions were made intentionally or with a reckless disregard for the truth, the warrant will be held invalid if the inclusion of the omitted facts would vitiate probable cause. Here, even if the omission of material facts from an affidavit were sufficient to vitiate probable cause, the appellant has not met his burden of showing by a preponderance of the evidence that the omitted facts in this case were material in nature.

---

[12]*See United States v. Martin*, 615 F.2d 318 (5th Cir. 1980); *Emack v. State*, 354 S.W.3d 828, 839 (Tex. App.—Austin 2011, no pet.); *Wise v. State*, 223 S.W.3d 548, 557 (Tex. App.—Amarillo 2007, pet. ref'd); *Darby v. State*, 145 S.W.3d 714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd); *Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Bosquez v. State*, 792 S.W.2d 550, 551 (Tex. App.—El Paso 1990, pet. ref'd); *Heitman v. State*, 789 S.W.2d 607, 610–11 (Tex. App.—Dallas 1990, pet. ref'd); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *Lamarre v. State*, No. 04-11-00618-CR, 2013 Tex. App. LEXIS 2036 (Tex. App.—San Antonio Mar. 1, 2013, pet. ref'd) (mem. op., not designated for publication); *Lehi Barlow Jeffs v. State*, No. 03-10-00272-CR, 2012 Tex. App. LEXIS 1487, at **26–27 (Tex. App.—Austin Feb. 24, 2012, pet. ref'd) (mem. op., not designated for publication); *Martin v. State*, No. 2-08-128-CR, 2009 Tex. App. LEXIS 6141 (Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication); *Volk v. State*, Nos. 01-07-00265-CR, 01-07-00266-CR, 01-07-00326-CR, 2008 Tex. App. LEXIS 5574 (Tex. App.—Houston [1st Dist.] July 24, 2008, pet. ref'd) (mem. op., not designated for publication); *Sandefer v. State*, Nos. 12-04-00013-CR, 12-04-00014-CR, 12-04-00015-CR, 12-04-00016-CR, 2005 Tex. App. LEXIS 6301 (Tex. App.—Tyler Aug. 10, 2005, no pet.) (mem. op., not designated for publication). One sister court has declined to extend *Franks* to omissions. *See Davis v. State*, Nos. 10-10-00405-CR, 10-10-00406-CR, 10-10-00407-CR, 10-10-00408-CR, 10-10-00409-CR, 2012 Tex. App. LEXIS 1649, at *2 (Tex. App.—Waco Feb. 29, 2012, pet. ref'd) (mem. op., not designated for publication). Unpublished cases are not cited for any precedential authority, but only as consideration in our analysis.

*Ward v. State*, No. AP-74,695, 2007 Tex. Crim. App. LEXIS 1835, at **10–11 (Tex. Crim. App. May 23, 2007) (mem. op., not designated for publication) (footnotes omitted).[13]

Based on the foregoing authority and the circumstances of this case, we find that Stone's omission of the date of Verde's purchase of the trailer could qualify as a *Franks* violation.[14]

*(3)     The Trial Court Did Not Err in Suppressing the Evidence*

We now arrive at the trial court's ruling on the suppression issue.[15]  Immediately after hearing testimony and argument at the suppression hearing, the trial court said:

---

[13]Our citation to *Ward* is of course not to suggest reliance on that case as authority, but only to illuminate the instant discussion.  Unpublished opinions of the Court of Criminal Appeals have no precedential value.  TEX. R. APP. P. 77.3.

[14]When Iago failed to tell Othello it was in fact Iago who arranged for Cassio to be in possession of Desdemona's handkerchief, this omission had the same effect as an intentional falsehood.  *See* WILLIAM SHAKESPEARE, OTHELLO act 3, sc. 3.  We are of course not equating the instant affiant's conduct with the infamous Shakespeare villain, but simply point out that omissions of relevant facts can have serious effects on the ultimate statement.

[15]The court's findings of fact and conclusions of law included these elements:
- The trailer had been reported stolen in 2001;
- Verde presented a valid bill of sale dated 2009;
- Verde presented a telephone to Stone giving him the opportunity to speak to Soto, the seller;
- Stone omitted from the warrant the date the trailer was stolen;
- Stone "intentionally misstated that the Defendant could not identify who he bought the trailer from on the sworn affidavit used to secure the warrant";
- Stone "intentionally mislead [sic] the Court through his intentional omissions and incorrect statements";
- The trial court would not have issued a warrant if the officer's affidavit had contained the information presented in the hearing and had not contained the officer's false statement;
- Stone intentionally misled Judge Blake when he stated in the affidavit, "Your affiant interviewed Verde and questioned him about the stolen Trailer.  Verde admitted that he has owned the trailer for the past 3 years and bought it from another Hispanic male, who he could not identify."  Stone testified that "he" really meant "I" and that the statement was a typographical error; "The Court does not find this testimony to be credible especially given the fact that the Investigator is solely identified as 'Your Affiant' and the word 'I' does not appear in the affidavit.  We find this is a deliberate or recklessly false statement and must be excluded from the affidavit";
- Although Stone said in the affidavit that the trailer was reported stolen from Irving, he failed to state in the affidavit that it was stolen eleven years prior.  This was a "glaring omission" which was "deliberate and reckless";
- If the trial court had been apprised of these two facts, which appear to be Verde offering to put Stone in contact with the seller and the fact the trailer had been stolen eleven years earlier, the trial court would not have signed the warrant.  The warrant was invalid, the search was illegal, and all evidence procured shall not be used against Verde.

14

The affidavit as presented to Judge Blake, I can understand why she signed it, but the affidavit as presented to Judge Blake does not truly reflect the situation as it existed at the time. Reading this affidavit, you would think the defendant showed up with a stolen trailer, and he said he'd bought it from somebody and -- and didn't know who it was and it had been repainted, so the antennas went up.

What actually happened by virtue of the testimony we've heard is, he showed up to register the trailer. He had a bill of sale from the gentleman that spoke here today, even called him on the phone. He admitted -- he told the officer he had painted the trailer. It doesn't say in the affidavit that the trailer was stolen in 2001. This is -- he bought it in 2009, and is appearing in 2012, which is -- what? -- ten years or so. Then in the affidavit it says he couldn't identify who he bought it from. Well, that's not true. It's not a typo. It's an -- it's an incorrect statement. He knew who he bought it from because he brought a bill of sale.

If you look at the affidavit that reflects the facts, I wouldn't have signed a search warrant and I don't think Judge Blake would, either, if she had all of the facts. I think it's misleading by omission, in addition to the statements that are not correct. Certainly not correct.

Where a *Franks* violation occurs by omission of information, the reviewing court determines if the affidavit still establishes probable cause when the omitted information is included. *Heitman v. State*, 789 S.W.2d 607, 610–11 (Tex. App.—Dallas 1990, pet. ref'd) (citing *Martin*, 615 F.2d at 328; *Martin v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.).

Two essential changes would be made if the omitted information had been included. First, in addition to saying Stone discovered the trailer had been reported stolen, the affidavit should have said it had been reported stolen in 2001. Second, instead of saying Verde could not identify the Hispanic male from whom Verde bought the trailer, the affidavit should have said

Deferring to the trial court's determination of the credibility and demeanor of the testifying witnesses, we find that its findings of fact and conclusions of law are supported by the record.

15

Verde offered to let Stone speak to the Hispanic male from whom Verde bought the trailer. Thus, the reconstituted affidavit would have said that

- Verde contacted Stone to register a trailer; the trailer's publicly visible VIN had been removed, but Stone was able to ascertain the trailer had been stolen in 2001, eleven years before his application for a search warrant;

- Verde admitted having repainted the trailer;

- Stone's experience and training informed Stone that thieves commonly tried to disguise the appearance of stolen trailers by painting them;

- Verde told Stone he had owned the trailer for three years, and had bought it from a Hispanic male;

- Verde made telephone contact with this man and offered to let Stone speak to him;

- Verde did not explain why he had not registered the trailer in the three years he had owned it;

- based on his training and experience, Stone knew thieves commonly held stolen property for several years to purge or "cool off" title questions;

- Verde had purchased another trailer at the same time (three years prior) from the same person;

- it is possible that this second trailer was also stolen;

- the Irving police report listing the trailer as stolen also listed a vehicle and other items,[16] leading one to think the Irving crime was a large crime and further indicating a "high likelihood that several people could be involved in organized crime";

- Verde's residence had, by the driveway, another trailer, which could be stolen;

- the residence also had a two-car garage, where the first trailer could have been painted, the VIN decals could have been removed;

- Stone had learned from Fannin County law enforcement that Verde was on community supervision for a felony cocaine possession charge; and

- Stone knew from past experience that "drug dealers commonly buy, sale [sic] and trade in stolen property and for [sic] other illegal contraband."

We do not find that the adjusted affidavit established probable cause. Stone presented the reviewing magistrate—here, the trial court—with information that Stone had discovered a stolen trailer in Verde's possession and that Verde was on community supervision for possession of cocaine. There was evidence that Verde had painted the trailer, but also information Verde had owned the trailer for only three years of the trailer's reportedly eleven year history as a stolen trailer. Most troubling, Stone had the opportunity to investigate the past theft when Verde offered to let Stone speak to Soto, the seller. While we understand Stone's skepticism of any anonymous person Verde could have put on the telephone, that does not explain why the detective would not have at least taken note of Soto's contact information and investigated

---

[16]The Irving police report, like Stone's report, is not in the record before us. Stone's affidavit stated that the Irving police report "indicated one vehicle, trailer and several other pieces of equipment which were indicative of a larger theft . . . ." Thus, there was nothing to suggest the second trailer, seen on Verde's property, was among the property reported stolen by Irving police.

further. This affidavit, with the information Stone should have included, merely establishes that Verde was in possession of a trailer which had been reported stolen many years before Verde claimed to have purchased it. The only other parts of the affidavit undermining Verde's credibility were, perhaps, Verde's silence on why he had never registered the trailer and his felony community supervision. But Stone's description of his job on the task force suggested it was not unusual for persons to have unregistered trailers. Even with Stone's knowledge of Verde's criminal (albeit probationary) history and of the propensity for criminal types to traffic in stolen property, the affidavit does not begin to tie Verde to the theft of the trailer.

We find that the trial court's ruling is supported by the record. We further find that the affidavit, adjusted for its errors, does not establish probable cause to issue a search warrant for Verde's residence. We affirm the trial court's ruling.


Josh R. Morriss, III
Chief Justice


Date Submitted: March 5, 2014
Date Decided: April 23, 2014

Publish

18