# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00752-CV

**Patrick Stacks, Appellant**

**v.**

**Burnet County Sheriff's Office, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-GN-14-001970, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

This appeal concerns the circumstances of Patrick Stacks' termination from his position as a deputy sheriff with the Burnet County Sheriff's Office (BCSO). As required by law, BCSO reported the termination to the Texas Commission on Law Enforcement (the Commission) and stated that he had been dishonorably discharged. *See* Tex. Occ. Code § 1701.452 (requiring submission of employment-termination reports); 37 Tex. Admin. Code § 217.7(b) (2018) (Texas Comm'n on Law Enf't, Reporting Appointment and Separation of a Licensee).[1] Stacks petitioned to correct the report to reflect an honorable or general discharge. An administrative law judge (ALJ) issued an order denying his petition, and the trial court affirmed the order. For the reasons that follow, we will likewise affirm.

---

[1] We cite to the current version of the relevant statutes and regulations.

## BACKGROUND

Whenever a law enforcement officer leaves employment for any reason, the chief of the employing agency or their designee must submit a report to the Commission regarding the separation. Tex. Occ. Code § 1701.452(a). The report must include "a statement on whether the license holder was honorably discharged, generally discharged, or dishonorably discharged." *Id.* § 1701.452(b). BCSO's report on Stacks reflected that he received a dishonorable discharge, which occurs when an officer is terminated "in relation to allegations of criminal misconduct" or "for insubordination or untruthfulness." *Id.* § 1701.452(b)(3).

Stacks filed a petition with the executive director of the Commission to correct the report to reflect an honorable or general discharge. *See id.* § 1701.4525(a); 37 Tex. Admin. Code § 217.8(a) (2018) (Texas Comm'n on Law Enf't, Contesting an Employment Termination Report). A general discharge means that the officer's termination was "related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged" or for a documented performance problem. Tex. Occ. Code § 1701.452(b)(2). On the other hand, an honorable discharge occurs when the officer leaves employment "while in good standing and not because of pending or final disciplinary actions or a documented performance problem." *Id.* § 1701.452(b)(1).

The executive director referred Stacks' petition to the State Office of Administrative Hearings for a contested-case proceeding. *See id.* § 1701.4525(a), (d); 37 Tex. Admin. Code § 217.8(c), (d). At this hearing, BCSO bore the burden to establish by a preponderance

2

of the evidence that "the alleged misconduct occurred."[2]  *See* Tex. Occ. Code § 1701.4525(e); 37 Tex. Admin. Code § 217.8(d).

BCSO argued that a dishonorable discharge was appropriate because Stacks was fired for untruthfulness.  More specifically, BCSO alleged that Stacks omitted crucial details from an offense report and probable cause affidavit describing his arrest of Chance Paul Tendick[3] that rendered both documents misleading.  The relevant part of the affidavit reads:

> I, STACKS, PATRICK, hereby swear that: on the 06/21/2013 the defendant TENDRICK, CHANCE PAUL did commit the offense of POSS CS PG 1 < IG.
>
> This belief is based upon the following information: The Affiant observed a gold 2005 Chevrolet Trail Blazer, Texas Temporary Tag #7419310, traveling in the east bound in the 7200 block of FM 1431 W.  The vehicle did not have a working license plate light.  The Affiant conducted a traffic stop of the vehicle in the 7000 block of FM 1431 W.  The Affiant made contact with the vehicle's occupants and observed the front seat passenger, who verbally identified himself as Chance Paul Tendick 8/29/1987 W/M, holding a clear glass pipe in his lap.  From the Affiant's law enforcement experience and training the Affiant recognized the pipe to be used to smoke illegal narcotics.  The Affiant then conducted a search of Tendick's person and the contents of his pockets. Tendick had a red Altoids mint tin in his right front shorts pocket.  Inside the tin was two clear plastic bags containing a crystal substance consistent with methamphetamine. The total weight of the methamphetamine was less than one gram.

---

[2] The Commission "is not considered a party in a proceeding conducted by the State Office of Administrative Hearings under this section."  Tex. Occ. Code § 1701.4525(g).

[3] The record contains differing spellings of Tendick's last name.  We use the spelling employed by the ALJ's decision and order for consistency.

Stacks added in the offense report that Officer Jesus Canchola of the Granite Shoals Police Department was present and assisted him.

Both the report and the affidavit omit the role played by a confidential informant (the CI). Investigator Andrew White, the BCSO officer who usually worked with the CI, testified that the informant called him after the stop to inform White that he was present and that Stacks and Canchola "want[ed] him to do something that he thought was not correct." Following an internal investigation, Stacks submitted a written statement explaining all the circumstances surrounding the stop:[4]

> On Thursday, June 20th, June 2013, I was meeting with Granite Shoals PD Officer Canchola #606 when he advised that he was going to meet with a confidential informant. A short while later I observed a gold Chevrolet Trail Blazer pull into the Jet Stop Convenient store. A white male exited the vehicle and was standing next to the vehicle. Officer Canchola stated that was his confidential informant and said he was going to speak with him. I then left the area until I received another phone call from Officer Canchola approximately half an hour later. Officer Canchola asked if I could return to the Jet Stop convenient store and meet with him. I arrived and met with Officer Canchola. I observed the gold Chevrolet Trail Blazer still parked in front of the store and the white male standing at the rear of the vehicle with the rear cargo door open. Officer Canchola advised me that his informant had told him about a person that was carrying several bags of methamphetamine. Officer Canchola then introduced me to the Informant who verbally identified himself as [the CI]. [The CI] then told Canchola he did not want to be at the store. Officer Canchola

---

[4] The statement is preceded by a "Garrity Warning" in which Stacks declares that Sergeant Gary Ferguson ordered him to give the statement "as a condition of my employment" and that Stacks otherwise wished to retain his constitutional right to remain silent. *See Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) (holding that incriminating statements obtained from police officers under threat of removal from office are inadmissible in subsequent criminal proceedings).

offered that he and [the CI] go to the Granite Shoals Police Department. Officer Canchola and [the CI] left the store at this point.

A short time later, approximately 5 to 10 minutes, Officer Canchola called me again. Officer Canchola asked me to come over to the police department. I arrived and found the gold Trail Blazer and [the CI] parked around back. [The CI] was standing at the rear of the Trail Blazer. I saw Officer Canchola's vehicle but he was not present. At this time I observed Officer Canchola exit the rear door of [the] police department. Officer Canchola handed [the CI] a screwdriver. [The CI] then began removing the license plate light cover of his vehicle. Once the cover was off [the CI] started trying to grab the light bulb. [The CI] asked if either I or Officer Canchola had something to grab hold of the bulb with. I said I had a pair of gloves and [the CI] asked if he could use them. I handed the gloves to [the CI] who then pulled the bulb out. [The CI] then returned the gloves to me. I then stepped away from the area to take a phone call. When I returned [the CI] handed Officer Canchola the screwdriver and Officer Canchola returned it to the police department. Officer Canchola began speaking to [the CI] but I could not hear what the conversation was about. [The CI] then said he was leaving to go see a girl and that he would call Canchola in a little while. Officer Canchola told me that he would get in touch with me later. I then left the area in one direction while [the CI] and Canchola went another.

Later that night or the following morning:

Officer Canchola again called me and said that [the CI] was going to be leaving shortly and that [the CI] had told him that the subject carrying the narcotics would be in the front passenger seat of the Trail Blazer. Officer Canchola asked if I would meet him off Prairie Creek Road near Kingswood at the self storage buildings. I arrived and met with Officer Canchola. Officer Canchola asked if I would stay in the area and look for the vehicle while he waited further down Prairie Creek Road. After approximately 45 minutes Officer Canchola called and stated that he had spoken to [the CI] and the subject with the narcotics was sitting in the driveway with another male subject. Officer Canchola said that [the CI] was going to contact him when they left . . . . Approximately 10 to 15 minutes went by and Officer Canchola called and stated that the vehicle with the subject carrying

5

the narcotics was leaving [the CI's] residence. While on the phone with Officer Canchola, I observed the gold Trail Blazer pass by. The vehicle was traveling northbound towards FM 1431. The vehicle did not have a working license plate light. I pulled in behind the vehicle and informed Officer Canchola. Officer Canchola said he was trying to catch up with the vehicle and instructed me to stop the vehicle. I then activated my emergency overhead lights and affect[ed] a stop of the vehicle.

Stacks did not dispute that he was terminated for omitting these details from his offense report and affidavit but argued that the omissions did not amount to "untruthfulness." Stacks reasoned that even though further information might have assisted his superiors, the district attorney, or the judge assigned to Tendick's case, "every single word" in both documents were true. BCSO responded that the omissions rendered both documents seriously misleading.[5]

The ALJ issued a decision and order finding that Stacks omitted the informant's involvement from his offense report and affidavit as well as all the events that preceded the stop. Based on these findings, the ALJ concluded that BCSO established that Stacks had been discharged for untruthfulness and was not entitled to have the termination report changed.[6] The trial court affirmed the ALJ's order. This appeal followed.

---

[5] District Attorney Sonny McAfee testified that he declined to pursue charges against Tendick after learning the full facts of the case.

[6] BCSO had also argued that Stacks was dishonorably discharged because he was fired after an investigation for perjury and fabrication of evidence. The ALJ expressly declined to decide whether BCSO established that alternative ground, and it is not before us on appeal.

## DISCUSSION

Stacks argues in a single issue on appeal that the omissions from the report and affidavit do not amount to "untruthfulness."

## Standard of Review and Applicable Law

We review the ALJ's order under the substantial-evidence standard in the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.174; *City of Rice v. Texas Comm'n on Law Enf't Officer Standards & Educ.*, No. 03-11-00047-CV, 2013 WL 3186194, at \*2 (Tex. App.—Austin June 21, 2013, no pet.) (mem. op.). Under this standard, we must reverse and remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are, among other things, "in violation of a constitutional or statutory provision" or "affected by other error of law." Tex. Gov't Code § 2001.174(2)(A), (D).

Resolution of this appeal turns on the proper interpretation of Section 1701.452 of the Occupations Code. Statutory interpretation presents a question of law that we review de novo "even when we are reviewing agency decisions." *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). Our goal when construing a statute is to determine and give effect to the legislature's intent. *Id.* We rely on the plain meaning of the statutory text as expressing that intent "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). To determine the plain meaning of an undefined term, we typically begin with dictionary definitions "and then consider the term's usage

in other statutes, court decisions, and similar authorities." *Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017).

**Analysis**

The parties' dispute centers on the meaning of the term "untruthfulness" in Section 1701.452. *See* Tex. Occ. Code § 1701.452(b)(3). We begin with the dictionary definition of the term: "false" or "inaccurate." *Webster's Third New Int'l Dictionary* 2514 (2002); *see Black's Law Dictionary* (10th ed. 2014) (defining "untrue" as "not correct; inaccurate"). The common meaning of "false" is "not corresponding to truth or reality: not true," or "tending to mislead," or "deceptive." *Webster's Third New Int'l Dictionary* 819 (2002); *see Smith v. State*, 363 S.W.3d 761, 775 n.11 (Tex. App.—Austin 2012, pet. ref'd) (collecting dictionary definitions of "false"). Thus, the plain meaning of the term "untruthfulness" extends to both outright falsehoods as well as misleading or deceptive representations.

BCSO argues that omitting facts can render an otherwise-true representation misleading and cites to *Franks v. Delaware*, 438 U.S. 154 (1978) for support. The United States Supreme Court held in *Franks* that a defendant may challenge a warrant by establishing that police deliberately or recklessly included false statements in the sworn affidavit used to establish probable cause. *Id.* at 155-56. If the defendant makes the requisite showing, and the remaining contents of the affidavit do not establish probable cause, the warrant is void. *Id. Franks* addressed affirmative statements, but BCSO points out that many courts have extended *Franks* to circumstances where police deliberately or recklessly omitted a fact from the affidavit that would have eliminated probable cause if it had been included. *See United States v. Martin*, 615 F.2d 318, 328 (5th Cir.

1980) (deciding that "allegations of material omissions were to be treated essentially similarly to claims of material misstatements" for purposes of *Franks*); *accord Gonzales v. State*, 481 S.W.3d 300, 310-11 (Tex. App.—San Antonio 2015, no pet.); *State v. Verde*, 432 S.W.3d 475, 486 (Tex. App.—Texarkana 2014, pet. ref'd); *Blake v. State*, 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Heitman v. State*, 789 S.W.2d 607, 610-11 (Tex. App.—Dallas 1990, pet. ref'd). These decisions recognize that an omission can deceive under certain circumstances. *E.g. Verde*, 432 S.W.3d at 486 n.14 (observing generally that an omission can have "the same effect as an intentional falsehood").

This Court has never decided whether *Franks* applies to omissions, and we do not reach that question today because the validity of a warrant is not the question before us. *Cf. Emack v. State*, 354 S.W.3d 828, 837-38 (Tex. App.—Austin 2011, no pet.) (assuming without deciding that *Franks* applies to material omissions from warrant affidavit). In any event, these cases have limited application here because the *Franks* definition of untruthfulness is specifically tailored to the context of a magistrate's determination of whether police demonstrated that probable cause exists to issue a warrant. Information in an affidavit is truthful for that purpose if it "is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. This standard specifically contemplates that "truthful" facts may turn out to be false. *See id.* (holding that truthfulness requirement "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct"). Chapter 1701 of the Occupations Code does not supply a similar limitation on the meaning of

9

"untruthfulness."[7] *See Rodriguez*, 547 S.W.3d at 838. Moreover, the truthfulness of an officer's affidavit or offense report will arise outside of the context of a defendant's challenge to probable cause. To give one example, District Attorney Sonny McAfee testified that he personally reviewed Stacks' offense report and affidavit when deciding whether to bring charges against Tendick. Because Section 1701.452 applies in many more situations than does *Franks*, we take our sister courts' discussion of the deceptive effect of omissions in the *Franks* context as instructive but not definitive.[8]

The law recognizes the misleading effect of omissions in many other contexts. For example, a publication "can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the [publication's] individual statements considered in isolation were literally true." *Neely v. Wilson*, 418 S.W.3d 52, 64 (Tex. 2013) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)). For the same reason, fraud by nondisclosure is a subcategory of fraud because a failure to disclose a fact "may be as misleading as a positive misrepresentation of facts." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). The Legislature stated the concept most explicitly in its prohibition on offering to sell a security through either a false statement or "an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." Tex. Rev. Civ. Stat. art. 581-33(A)(2). In other words, an omission can mislead by "substantially altering the information

---

[7] The Commission has statutory authority to "further specify the circumstances that constitute honorably discharged, dishonorably discharged, and generally discharged" by administrative rule, but it has not exercised that authority. *See* Tex. Occ. Code § 1701.452(c).

[8] We stress that our analysis has no bearing on how this Court will analyze *Franks* issues in future cases.

available." *See Beebe v. Compaq Comput. Corp.*, 940 S.W.2d 304, 306 (Tex. App.—Houston [14th Dist.] 1997, no writ); *see also* Tex. Bus. & Com. Code § 17.46(b)(24) (stating that it is a "false, misleading, or deceptive" act to fail "to disclose information concerning goods or services" if the consumer would not have entered the transaction if the information had been disclosed). These authorities all support the concept that an omission can render a statement untruthful. *Cf. Dallas Morning News, Inc. v. Tatum,* 554 S.W.3d 614, 627 (Tex. 2018) (stating that a publication is untruthful by implication if it "gets the details right but does not put them in the proper context" (quoting *Turner*, 38 S.W.3d at 115)).

Applying its common meaning, a discharge for untruthfulness includes a discharge for omitting material information or facts that rendered a statement misleading or deceptive. Stacks objects that such interpretation means that an officer can be terminated for untruthfulness—and face a dishonorable discharge—whenever he omits a detail from a report or statement even if he had no reason to know that a superior officer would later consider the fact important. We do not agree that such a result flows from the outcome of this case. Each administrative appeal of an employment termination report necessarily turns on its own facts, and the employing agency bears the burden of proof. The undisputed omissions made by Stacks, as indicated by the record before us, are significant and material to the degree that they render his affidavit and report, in the context of the specific offense reported, untruthful.

Further, Section 1701.452 does not itself empower a law-enforcement agency to terminate an officer. Rather, it spells out the reasons for termination that qualify as an honorable, general, or dishonorable discharge. *See generally* Tex. Occ. Code § 1701.452. We are sympathetic

11

to the fact that a less-than-honorable discharge can have dire consequences for an officer's career. *See Colorado Cty. v. Staff*, 510 S.W.3d 435, 446 n.42 (Tex. 2017). A law enforcement agency may not hire a licensed law enforcement officer without requesting the officer's employment-termination reports from the Commission. *See* Tex. Occ. Code § 1701.451(a). And a second dishonorable discharge will result in the Commission suspending the officer's license. *See generally id.* § 1701.4521 ("License Suspension for Officer Dishonorably Discharged"). Nevertheless, the legislature chose to specify "untruthfulness" as grounds for a dishonorable discharge, and we must apply the statute as written. *See Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013) ("We must take the Legislature at its word, respect its policy choices, and resist revising a statute under the guise of interpreting it.").

Stacks also raises a practical objection, that including material omissions within the definition of untruthfulness will endanger confidential informants. Stacks asserts that such a holding will result in police officers erring on the side of disclosing confidential informants in their reports, thus increasing the risk that defendants will learn their identity in discovery. This argument is unpersuasive because the State of Texas has the privilege "to withhold from disclosure the identity of individuals who provide the government with information regarding violations of law to officers charged with enforcement of that law." *City of Carrollton v. Paxton*, 490 S.W.3d 187, 204 (Tex. App.—Austin 2016, pet. denied); *see* Tex. R. Evid. 508. Nothing in our holding today affects that privilege. Further, the identity of the confidential informant in this case is irrelevant to the analysis of whether the affidavit and report, taken as a whole, were untruthful.

We hold that a discharge for "untruthfulness" within the meaning of Section 1701.452(b)(3) includes a discharge for material omissions. Consequently, the trial court did not err in affirming the ALJ's order that Stacks was not entitled to have the termination report changed. We overrule Stacks' sole issue.

## CONCLUSION

We affirm the trial court's order.

_____
Cindy Olson Bourland, Justice

Before Justices Puryear, Bourland, and Toth

Affirmed

Filed: December 12, 2018

13