# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00337-CR

---

**James Logan Diez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 424TH DISTRICT COURT OF BURNET COUNTY
### NO. 48895, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

## O P I N I O N

A jury found James Logan Diez guilty of two counts of possession of child pornography and assessed punishment at 30 years in prison for each. *See* Tex. Penal Code § 43.26(a). In his appellate issues, Diez maintains that the Texas statutory scheme for his offenses is unconstitutional, either as applied to his conduct or facially; the affidavit supporting the warrant to search his home did not show probable cause; the trial court should have severed the two counts for separate trials; the court's award to Diez of $1,500 for a cellphone forensic expert needed to be increased to $15,000; the prosecutors violated his rights under *Brady v. Maryland* by not performing a forensic search of one of his cellphones and by not providing him with the contacts list from his cellphone; the evidence was insufficient to support proof of "lewd exhibition" and the requisite specific intent; the court abused its discretion by admitting several exhibits; the court should have instructed the jury on mistake of fact, mistake of law, and Diez's alleged

naturism–nudism religious beliefs; the court's order that Diez serve his sentences consecutively violates the Eighth Amendment; he was deprived of access to legal research; the court ignored his subpoena requests; and even if none of these alleged errors warrants reversal, the cumulative harm from all the alleged errors warrants reversal.[1]  We affirm.

## BACKGROUND

A cyber tip came to the National Center for Missing and Exploited Children (NCMEC) that an image of child pornography was uploaded to Pinterest.  The tip made its way to Texas investigators, who traced the upload to Diez's home.  An officer applied for, and was granted, a warrant to search the home based in part on the officer's affidavit description of the image at issue.

Officers searched Diez's home and interviewed him.  They recovered many items from the home, including cellphones and a CD of files that contained images of suspected child pornography.  When confronted, Diez admitted that he knew that he possessed nude images of children, including child pornography, but insisted that he was collecting the unlawful images for law enforcement.  Diez was later arrested and indicted for possession of child pornography, in Count I and Count II against him.

Diez represented himself during much of the pre-trial proceedings and during the trial itself.  He sought pre-trial relief on many grounds, including moving to suppress the evidence obtained from the search of his home; receiving but then seeking substantially more in funds to hire a cellphone forensic expert; and challenging the constitutionality of Texas's statutory scheme on possession of child pornography.  The State at trial succeeded in having admitted into evidence

---

[1]  We renumber and reorganize Diez's appellate issues.

not only the two indicted images of child pornography but also about 20 other images of nude children kept by Diez.

Ultimately, a jury found him guilty of possessing the two indicted images. It assessed 30-year sentences for each count, and the court ordered those sentences served consecutively. On appeal, he raises the issues previewed above.

## CONSTITUTIONAL COMPLAINTS ABOUT THE STATUTORY SCHEME

Diez's first three appellate issues are complaints under the federal constitution about Texas's child-pornography statutory scheme, *see* Tex. Penal Code §§ 43.25(a)(2), 43.26(a), (b)(2), whether as applied to his conduct or on the scheme's face. He states what we discern to be the three distinct complaints of (1) a First Amendment as-applied challenge that the two indicted images are protected speech; (2) a void-for-vagueness facial challenge based on the lack of any statutory definition of "lewd"; and (3) a First Amendment overbreadth facial challenge to the possession statute, including its incorporation of a nearby statute's "sexual conduct" definition, specifically, the definition's "lewd exhibition" portion.[2] We overrule these issues on their merits.

---

[2] The State points out, and we agree, that much of Diez's briefing on these constitutional complaints is in reality an evidence-sufficiency attack on his conviction. For example, in his argument on the constitutional complaints, Diez says, "Neither of the indicted images . . . rose to the level of child pornography," and makes other similar statements. We address below the evidence-sufficiency arguments Diez raises. But because other of his arguments sufficiently state a constitutional complaint separate from his evidence-sufficiency complaint, we proceed with the analysis in this section. *Cf. Ritz v. State*, 533 S.W.3d 302, 309 (Tex. Crim. App. 2017) (Newell, J., concurring with dismissal of petition for discretionary review) (stating that defendant's complaint was "an overbreadth or vagueness challenge to the statute" and not an evidence-sufficiency challenge because defendant was "arguing how the statute might hypothetically operate in extreme circumstances unrelated to his own case"). The State also argues that some of Diez's constitutional issues are unpreserved, but because those issues fail on the merits, we assume that they have been preserved. *See Compton v. State*, 666 S.W.3d 685, 718 (Tex. Crim. App. 2023) ("Assuming without deciding that Appellant preserved error on this claim, the claim lacks merit.").

*Applicable Law*

As-applied constitutional challenges and facial constitutional challenges differ over "the extent to which the invalidity of the challenged law must be demonstrated and the corresponding breadth of the remedy." *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (internal quotation omitted); *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022). But classifying a complaint as either as-applied or facial "does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew*, 587 U.S. at 138. For Diez's part, he draws the substantive rules for his constitutional complaints from the First Amendment's speech protections.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." This Free Speech Clause protects interests whose vindication allows for an unusual kind of constitutional challenge—First Amendment overbreadth. *See United States v. Hansen*, 599 U.S. 762, 769–70 (2023). Ordinarily, parties lack standing to assert the constitutional rights of third parties. *Id.* at 769. And parties advancing facial constitutional complaints "normally must establish that *no set of circumstances* exists under which the [statute] would be valid." *Id.* (internal quotation omitted). Complaints of First Amendment overbreadth get to break these rules—the relevant doctrine "instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *Id.* Parties bringing such complaints thus may vindicate others' rights and the broader society's interest in hearing those others' speech. *Id.* at 770. An overbreadth complaint is thus "a second type of facial challenge." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)); *accord Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021); *see also*

4

*Virginia v. Hicks*, 539 U.S. 113, 119 (2003) ("The First Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges.").[3]

### First Amendment as-applied challenge based on free speech

Diez states his as-applied challenge this way: "The question as specifically applied to [Diez] is whether the indicted images . . . were properly characterized as sexual conduct when they depicted only nudity of the lower portions with the intent to stimulate a sexual response on the part of the photographer." Relatedly, he says that the indicted images were "not intended to excite sexual interest either by the photographer or by Appellant." The substantive rule of law that he relies on for this as-applied challenge is First Amendment free speech. *See Bucklew*, 587 U.S. at 138 (requiring separate, substantive rule of law to support as-applied constitutional complaints). This as-applied challenge is foreclosed by the precedents from the Supreme Court of the United States that address child pornography in the context of First Amendment law and, more specifically, the place that the concept of "lewd exhibition" occupies in those precedents.

Lewd exhibition of certain unclothed body parts is, as a matter of constitutional law, an example of two of the categories of speech that are not protected by the First Amendment. The Amendment allows "restrictions upon the content of speech in a few limited areas," which

---

[3] Diez in his appellate briefing insists that his overbreadth complaint is an as-applied complaint, partly because he "does not seek to declare the challenged provisions of" the statute at issue unconstitutional for all but seeks only reversal of his conviction. Yet overbreadth complaints are virtually always facial complaints, and this case is not the kind of "unusual" case in which an overbreadth complaint may amount to an as-applied complaint as well as a facial one. *See Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483–84 (1989). To argue overbreadth as he seeks to, Diez necessarily must argue for unconstitutional applications of the statutory language beyond his own conduct. *See United States v. Hansen*, 599 U.S. 762, 770 (2023); *Fox*, 492 U.S. at 482–85. He does in fact make such arguments. These arguments thus state a facial complaint. Because we discern both a facial overbreadth complaint in his briefing and a separate as-applied complaint, we consider him as having sufficiently briefed the two distinct complaints.

as a matter of constitutional history and tradition have been "long familiar to the bar." *See Stevens*, 559 U.S. at 468. Two of these categories of unprotected speech are obscenity and child pornography. *See Roth v. United States*, 354 U.S. 476, 483 (1957) (obscenity); *New York v. Ferber*, 458 U.S. 747, 764 (1982) (child pornography). Child pornography is not protected no matter whether the item of child pornography could meet the *Miller v. California* test for obscenity. *Ferber*, 458 U.S. at 764.

Within both categories, lewd exhibition of certain unclothed body parts is a type of content that the First Amendment does not protect, if the respective category's other requirements are met, thus raising First-Amendment-protected depictions of nudity to the level of being unprotected. *See Osborne v. Ohio*, 495 U.S. 103, 112 (1990) (stating, in child-pornography case, that "depictions of nudity, without more, constitute protected expression"). Thus, in *Miller*, one of the "plain examples of what a state statute could define for regulation under part [two[4]] of the" obscenity test was "[p]atently offensive representations . . . of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S. 15, 25 (1973). The Court added that "pornography" means "a depiction . . . of licentiousness or *lewdness*: a portrayal of erotic behavior designed to cause sexual excitement." *Id.* at 18 n.2 (emphasis added) (quoting *Pornography*, Webster's Third New International Dictionary (unabridged ed. 1969)). Thus, a depiction of a lewd exhibition of certain unclothed body parts is definitionally beyond First Amendment protection, assuming obscenity's other requirements are met.

---

[4] *Miller v. California*'s three-part test for obscenity is (1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. 413 U.S. 15, 24 (1973).

As for child pornography, the concept of lewd exhibition played a similar role when the Court in *Ferber* categorically set child pornography outside First Amendment protection. The Court there upheld a state statute criminalizing the use of a child in a sexual performance, *see Ferber*, 458 U.S. at 765–66, with the statutory scheme defining "sexual performance" to include "sexual conduct" and "sexual conduct" as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals," *id.* at 750–51 (citing and quoting 1977 N.Y. Sess. Laws, ch. 910, § 2 (McKinney)).

Thus, for both the unprotected categories of obscenity and child pornography, "lewd exhibition" of certain unclothed body parts signals unprotected speech (assuming the other requirements are met). The Court in *Ferber* said it this way, "The term 'lewd exhibition of the genitals' is not unknown in this area and, indeed, was given in *Miller* as an example of a permissible regulation." *Id.* at 765 (citing *Miller*, 413 U.S. at 25). And in a later case, rejecting the dissenters' view that lewd exhibitions of genitals are constitutionally distinct from other lewd exhibitions, the Court said, "We do not agree that this distinction between body areas and specific body parts is constitutionally significant: The crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks." *Osborne*, 495 U.S. at 114 n.11; *see also id.* at 113 (reasoning that state supreme court's construction of state statute foreclosed overbreadth challenge partly because construction required proof that nudity depicted "constitutes a lewd exhibition or involves a graphic focus on the genitals").

We conclude in a separate section below, under his evidence-sufficiency appellate issue, that the evidence was sufficient to support Diez's conviction on both counts. Specifically, the evidence was sufficient to support jury findings that Diez possessed images of "lewd exhibitions" of certain unclothed body parts of children, as required by the statutory scheme.

7

Because the evidence was sufficient, we uphold the jury's verdict finding that Diez possessed child pornography under each count (and did not possess depictions of mere child nudity).

Because he possessed child pornography, his conviction is for conduct falling within the child-pornography category of speech under the First Amendment, which does not receive free-speech protection. *See Ferber*, 458 U.S. at 764; *Savery v. State*, 819 S.W.2d 837, 838 (Tex. Crim. App. 1991). Diez thus cannot succeed on his as-applied First Amendment complaint. *See Hansen*, 599 U.S. at 769 (reasoning that defendant "[w]isely" did not advance any First Amendment as-applied complaint because defendant's conduct fell within fraud category of speech receiving no First Amendment protection (citing *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003))). We overrule his first issue.

### Void-for-vagueness facial challenge based on the lack of a statutory definition of "lewd"

Under his second issue, Diez argues that the applicable statutory language is void for vagueness on its face because it does not define "lewd." *See* Tex. Penal Code §§ 43.25(a)(2), 43.26(a), (b)(2); *see generally id.* §§ 43.01–.28. Although ordinarily constitutional vagueness challenges may not be advanced as facial challenges, "[t]his general rule gives way when freedom of speech under the First Amendment is involved"—"[w]hen a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct." *Ex parte Barton*, 662 S.W.3d 876, 880 (Tex. Crim. App. 2022) (quoting *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019)). Diez's facial-constitutional complaints involve First Amendment considerations (though his as-applied complaint did not) because when a child-pornography criminal law goes too far, the law almost certainly criminalizes protected speech. *See, e.g.*, *Ashcroft v. Free Speech Coal.*,

535 U.S. 234, 239–40, 244 (2002); *see also id.* at 245, 251 ("As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear. . . . [W]here the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment."); *United States v. Williams*, 553 U.S. 285, 304 (2008) (proceeding to void-for-vagueness analysis because "[a]lthough ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech" (quoting and citing *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494–95 & nn.6–7 (1982))).

Diez's vagueness complaint fails because of the place that the term "lewd exhibition" holds in First Amendment law as explained by the Supreme Court of the United States and which we explained in the preceding section. Because of the term's place, as a matter of First Amendment law, "lewd exhibition" is a well-known and long-used term that clearly saves from prohibition protected speech such as the kind of "innocuous picture of an unclothed infant" shared between family friends.[5] *See Osborne*, 495 U.S. at 114 & n.11; *see also Williams*, 553 U.S. at 306 (overruling vagueness challenge to statute whose definition of child pornography included "lascivious exhibition" partly because statute's "require[ment] that the defendant hold, and make a statement that reflects, the belief that the material is child pornography" is a "clear question of

---

[5] The Court in *Osborne* deployed this reasoning to reject the dissenters' arguments, one of which asserted that statutes using the term "lewd" are for that reason "too indefinite and uncertain to be enforceable." *See Osborne v. Ohio*, 495 U.S. 103, 114 & n.11 (1990); *id.* at 136 (Brennan, J., dissenting). Therefore, the Court at least implicitly decided that the term "lewd" is not unconstitutionally vague.

fact," helping to save statute from vagueness); *State v. Bolles*, 541 S.W.3d 128, 139 & n.54 (Tex. Crim. App. 2017) (noting that "lewd" and "lascivious" are virtually interchangeable). We thus join with our sister courts who have rejected vagueness challenges like Diez's. *See Gerron v. State*, 524 S.W.3d 308, 316–17 (Tex. App.—Waco 2016, pet. ref'd) ("The term 'lewd exhibition,' as used in the statute, is defined in dictionaries and is so well known as to be understood by a person of ordinary intelligence. Accordingly, the statute is not void for vagueness."); *Goodson v. State*, Nos. 02-01-00458-CR – 02-01-00461-CR, 2003 WL 1894578, at *2–3 (Tex. App.—Fort Worth Apr. 17, 2003, pet. ref'd) (mem. op., not designated for publication); *Garay v. State*, 954 S.W.2d 59, 63 (Tex. App.—San Antonio 1997, pet. ref'd). We overrule this issue.

### First Amendment overbreadth facial challenge

Diez's third and final constitutional issue is that Texas's statutory scheme is overbroad in violation of the First Amendment. He asserts specifically that the scheme sweeps too broadly by criminalizing depictions beyond just the "hard-core" of pornography, as that term has been used by the Supreme Court of the United States; criminalizing depictions that do not depict "active" sexual conduct; and criminalizing exposures of female breasts without an accompanying exposure of genitals. Supreme Court case law forecloses Diez's arguments.

"Because it destroys some good along with the bad, '[i]nvalidation for overbreadth is strong medicine that is not to be casually employed.'" *Hansen*, 599 U.S. at 770 (internal quotations omitted) (quoting *Williams*, 553 U.S. at 293). "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth

10

challenge.'" *Williams*, 553 U.S. at 303 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case," that is, via as-applied challenges. *See Hansen*, 599 U.S. at 770, 784–85.

To decide whether a statute is overbroad, we first determine what the statute covers and then weigh whether what is covered is made up substantially of protected conduct. *See id.* at 770, 781–85. Here, the possession statute criminalizes possession of child pornography using these terms:

> A person commits an offense if:
>
> (1) the person knowingly or intentionally possesses, or knowingly or intentionally accesses with intent to view, visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct . . . ; and
>
> (2) the person knows that the material depicts the child as described by Subdivision (1).

Tex. Penal Code § 43.26(a). The statute defines the term "sexual conduct" by incorporating that term's definition from a nearby statute, which says that "sexual conduct" includes "lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *See id.* §§ 43.25(a)(2), 43.26(b)(2).

Because the statutory scheme's use of the First Amendment term of art "lewd exhibition" covers items that Supreme Court case law definitionally places within the unprotected speech category of child pornography, we can dispense with the parts of Diez's overbreadth complaint that are rooted in challenging that term of art. *See Hansen*, 599 U.S. at 770–85 (because statute used terms at issue in their "specialized, criminal-law sense," statute was not overbroad

11

because it stretched no further than "speech integral to unlawful conduct," which is a category of speech unprotected by the First Amendment); *Williams*, 553 U.S. at 294–95, 297–99 (because statute's "string of operative verbs" carried "a transactional connotation" concerning its proscriptions related to child pornography, statue was not overbroad because "[o]ffers to engage in illegal transactions are categorically excluded from First Amendment protection").

Nor is the statute overbroad by criminalizing depictions that lack what Diez calls "active" sexual conduct. He gives as examples of "active sexual misconduct . . . masturbation or sex with another person." But Supreme Court case law confirms that Diez's proposed distinction is insignificant constitutionally. Both *Ferber* and *Williams* upheld statutes criminalizing conduct relating to child pornography. *Ferber*'s statute used the defined term "sexual conduct," and *Williams*'s the defined term "sexually explicit conduct." *See Williams*, 553 U.S. at 296. The Court said that "'[s]exually *explicit* conduct' connotes actual depiction of the sex act rather than merely the suggestion that it is occurring." *Id.* at 297. The distinction that Diez seeks to draw is thus much the same as the distinction between the *Ferber* and *Williams* statutes. Yet the *Ferber* statute still passed muster under overbreadth doctrine, and the added "explicit" in *Williams* simply made that latter statute even more constitutionally permissible: "If anything, the fact that the defined term here is 'sexually *explicit* conduct,' rather than (as in *Ferber*) merely 'sexual conduct,' renders the definition more immune from facial constitutional attack." *Id.* at 296. Diez's argument thus must fail, as *Ferber* remains good law.

Diez's final argument—that the statutory scheme's criminalizing of depictions of the female breast alone without need of an accompanying depiction of genitals—was the dissenters' losing view in *Osborne*. They argued that the state statute there was "plainly overbroad" because the statute went beyond depictions that included unclothed genitals: "[T]he

12

broad definition of nudity in the Ohio statutory scheme means that 'child pornography' could include any photograph depicting a 'lewd exhibition' of even a small portion of a minor's buttocks or any part of the female breast below the nipple." *Osborne*, 495 U.S. at 131–32 (Brennan, J., dissenting). That view specifically did not prevail, on the way to the Court's upholding of the statute against overbreadth attack. *See id.* at 114 n.11, 125–26; *see also Ex parte Fusselman*, 621 S.W.3d 112, 121 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) ("[S]ection 43.26(a) is not unconstitutionally overbroad because it includes more body parts than genitalia."); *accord Ex parte Dehnert*, 605 S.W.3d 885, 892–93 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). *Osborne* remains good law, so Diez's position fails.

Diez has failed to show the kind of substantial, lopsided reach by Texas's statutory scheme into protected conduct needed to sustain his overbreadth challenge. *See Hansen*, 599 U.S. at 770. We thus overrule the rest of this third issue.

## AFFIDAVIT SUPPORTING SEARCH WARRANT

In his fourth appellate issue, Diez, relying on his motion to suppress, maintains that the affidavit supporting the warrant to search his home did not show probable cause. He argues that the affidavit was insufficient (1) on its face and (2) because of "material omissions" by the detective–affiant. We overrule this issue.

### *Applicable Law and Standard of Review*

A search warrant must be supported by probable cause, which exists when the search-warrant affidavit shows that there is a fair probability that evidence of an offense will be found at a specified location. *See* U.S. Const. amends. IV, XIV, § 1; Tex. Code Crim. Proc.

13

arts. 1.06, 18.01(b); *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021). This standard is "flexible and non-demanding." *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011).

A magistrate reviews the affidavit for whether it shows probable cause. The magistrate is bound by the four corners of the affidavit, whose fact statements are presumed valid, a presumption that precludes credibility determinations. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017); *McLain*, 337 S.W.3d at 272. But because the affidavit may make the probable-cause showing "under the totality of the circumstances," the magistrate may consider not only what the affidavit says but also any logical, reasonable inferences that may be drawn from its facts, *see Elrod*, 538 S.W.3d at 556, 560; *McLain*, 337 S.W.3d at 271–74. The inferences may themselves draw on "common-sense conclusions about human behavior . . . [as] understood by those versed in the field of law enforcement." *Elrod*, 538 S.W.3d at 560 (quoting *Illinois v. Gates*, 462 U.S. 213, 231–32 (1983)). The affidavit's facts plus reasonable inferences give rise to a "combined logical force," which should take precedence over whatever "other facts could or should have been included in the affidavit." *See id.* (quoting *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012)); *see also McLain*, 337 S.W.3d at 273 (requiring courts to "review warrant affidavits as a whole").

When we review a magistrate's decision that probable cause existed, our review is highly deferential and not *de novo*. *See Elrod*, 538 S.W.3d at 556; *McLain*, 337 S.W.3d at 271–72. If the magistrate had a "substantial basis" for deciding that there was probable cause, then we uphold the decision. *See Elrod*, 538 S.W.3d at 557; *McLain*, 337 S.W.3d at 271. Review is deferential in part because we must interpret the affidavit "in a common sense and realistic manner," not "in a hyper-technical manner." *See Elrod*, 538 S.W.3d at 556; *McLain*, 337 S.W.3d at 271. It is deferential also because we must usually call close cases in favor of the magistrate's

decision, to encourage police to use the warrant process. *See Elrod*, 538 S.W.3d at 556; *Duarte*, 389 S.W.3d at 354; *McLain*, 337 S.W.3d at 271. We defer to all reasonable inferences that the magistrate could have made. *McLain*, 337 S.W.3d at 271.

In addition, defendants may attack "the truthfulness of factual statements made in a search warrant affidavit," a challenge known as a *Franks* challenge. *Diaz*, 632 S.W.3d at 892; *see Franks*, 438 U.S. at 171–72. Such a challenge requires the defendant "to show by a preponderance of the evidence a material misstatement that was made intentionally or knowingly or with reckless disregard for the truth." *Diaz*, 632 S.W.3d at 892 (citing *Franks*, 438 U.S. at 155–56). A false statement is material if it "is necessary to the finding of probable cause." *Id.* (quoting *Franks*, 438 U.S. at 156).

Some courts have held that *Franks* challenges reach not only affirmative fact statements in an affidavit but also "material omissions" from the affidavit. *See id.* (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)); *see, e.g.*, *Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.). Neither the Court of Criminal Appeals nor our Court has decided that question. *See Diaz*, 632 S.W.3d at 892; *Stacks v. Burnet Cnty. Sheriff's Off.*, 565 S.W.3d 860, 866 (Tex. App.—Austin 2018, no pet.); *Emack v. State*, 354 S.W.3d 828, 837–38 (Tex. App.—Austin 2011, no pet.). We continue to leave the question open because the material-omission attack here fails on its merits. *See, e.g.*, *Diaz*, 632 S.W.3d at 894–95; *Emack*, 354 S.W.3d 838–39.

### Diez's first attack on the affidavit fails

Diez's first attack on the affidavit is that the sole Pinterest image described in the warrant was not sufficient to establish probable cause. He argues that the description was of mere

non-criminal child nudity and not child pornography. He argues that both the Texas possession statute and the detective's affidavit depend on the "wrong . . . belie[f] that mere exposure of a child's breast below the areola, without more, is child pornography." Diez's position fails because it overlooks a key piece of the statutory scheme and of the affidavit's language—that the material at issue involves "lewd exhibition" of a female child's breast from the top of the areola. *See* Tex. Penal Code §§ 43.25(a)(2), 43.26(a), (b)(2). Our analysis above shows the place that the term "lewd exhibition" holds in relevant First Amendment law.

Thus, Diez's position fails because he sees the affidavit as resting its showing on a "mere exposure of a child's breast below the areola, without more."[6] But in fact, the affidavit goes beyond mere child nudity by describing the image uploaded to Pinterest as depicting "lewd exhibition" of the child's breast below the top of the areola:

> The image depicts a fully nude prepubescent female child approximately 6-8 years of age during the lewd exhibition of the child's breast. The child is standing on a sand bar next to a body of water, and is posing completely nude. The child's breast is visible from the top of the areola down.
>
> . . . .
>
> The reported file depict[s] [a] nude, prepubescent, female child posed in a position exposing her breast from the areola down, which constitute[s] child pornography according to Chapter 43, Texas Penal Code.

The affidavit thus states an image constituting child pornography under Texas's statutory scheme. *See id.*; *cf. Bolles*, 541 S.W.3d at 138, 144 (whether evidence supported conviction for possession of child pornography turned on whether image was "lewd exhibition").

---

[6] Similarly, he asserts that Texas's statutory scheme for child pornography criminalizes "*any* image showing nudity below the areola." (Emphasis added.)

16

On top of its description of the image, the affidavit explains the detective–affiant's background, training, and expertise in investigating child pornography; the ways in which child-pornography collectors store, post, and trade images; and the affiant's reasons to believe that Diez had uploaded this particular image while at home.

Because the affidavit, when viewed as a whole, says that Diez while at home uploaded to Pinterest an image whose contents amount to child pornography, the affidavit sufficiently states probable cause to search the home. *See Bordelon v. State*, 673 S.W.3d 775, 787 (Tex. App.—Dallas 2023, no pet.) (affidavit with averments many like those here was sufficient); *Burke v. State*, 27 S.W.3d 651, 655–56 (Tex. App.—Waco 2000, pet. ref'd) (affidavit that allowed magistrate to reasonably infer that pictures "contained lewd exhibitions of the genitals of the children" stated probable cause).  We thus overrule this portion of Diez's fourth issue.

### Diez's **Franks-**based arguments fail

In the rest of his fourth issue, Diez argues that the affidavit suffers from "material omissions" reviewable under *Franks*.  First, he argues that the detective–affiant omitted "a more refined analysis . . . of what does and does not constitute child pornography," "omitt[ing] the distinctions in his affidavit that would separate protected material from prohibited material." Second, he argues that the affidavit omitted mention of "individual harm to a child."  Assuming without deciding that *Franks* reaches material omissions, *see Diaz*, 632 S.W.3d at 894–95; *Emack*, 354 S.W.3d at 838–39, we conclude that neither alleged omission passes the *Franks* test.

For the first alleged omission, Diez has failed "to show by a preponderance of the evidence a material misstatement that was made intentionally or knowingly or with reckless disregard for the truth."  *See Diaz*, 632 S.W.3d at 892 (citing *Franks*, 438 U.S. at 155–56).  In the

17

trial court, the most that Diez put forward when questioning the detective–affiant and when presenting argument is that the affiant's understanding of First Amendment law is mistaken and that Texas's statutory scheme is built on the same mistake. Diez's position was that mere nudity does not constitute a "lewd exhibition" and that the Pinterest image showed mere nudity. The trial court cogently summed up the problem with Diez's position when it told him:

> [T]he motion to suppress is based on your belief . . . that the affidavit wasn't valid because [the officer] knowingly misrepresented to the Court what was the existence of this photograph and what it depicted. And so you've asked him about what the photograph depicted. He's explained his understanding of what the photograph depicted. You just don't agree with it.
>
> . . . .
>
> Not agreeing with him is not sufficient, so we need to move on.

Diez's position is not that the officer intentionally, knowingly, or recklessly dealt falsely; it is, as he says in his appellate briefing, that the officer was simply "wrong in believing that mere exposure of a child's breast below the areola, without more, is child pornography" in Texas. Diez thus has not shown the required level of falsity under *Franks*.

The second alleged omission, about harm to a child, does not pass *Franks* either, in this instance because the alleged omission is not material—it is not necessary to the finding of probable cause. *See id.* (citing *Franks*, 438 U.S. at 156). The statutory scheme does not require separate proof of harm to a child when seeking to prove that an image shows child pornography. *See* Tex. Penal Code §§ 43.25(a)(2), 43.26(a), (b)(2); *Roise v. State*, 7 S.W.3d 225, 237–38 (Tex. App.—Austin 1999, pet. ref'd) ("[T]he purpose of section 43.26(a) is the protection of the individual child from exploitation . . . . The 'purpose' is not an essential element of the offense of

18

possession of child pornography." (internal citation omitted) (citing *Vineyard v. State*, 958 S.W.2d 834, 839 (Tex. Crim. App. 1998))). We thus overrule the rest of this issue.

## SEVERANCE

In his fifth issue, Diez maintains that the trial court abused its discretion by denying his motion to sever the two counts against him for separate trials. We hold that the court did not abuse its discretion because Diez did not make a required showing of unfair prejudice.

There is a two-tiered statutory framework for severances. Generally, severances are granted to the defendant as a matter of right. *See* Tex. Penal Code § 3.04(a); *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.); *see also Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000) (describing defendants' "absolute discretion" to decide whether to request "mandatory severance"). But in the second tier, if a defendant is being prosecuted for certain statutorily listed offenses, such as child pornography, then the defendant may receive a severance only on a showing that the defendant "would be unfairly prejudiced by a joinder of offenses" in the same trial. *See* Tex. Penal Code § 3.04(c); *Hodge*, 500 S.W.3d at 621. Because Diez was being prosecuted for two counts of one of the subject offenses, he recognizes that his right to a severance depends on an unfair-prejudice showing. "Unfair prejudice" means something more than the types of prejudice that a defendant "would automatically face in any case in which felony counts are joined." *See Hodge*, 500 S.W.3d at 622 (quoting *Riemer v. State*, Nos. 02-12-00613-CR – 02-12-00615-CR, 2013 WL 6565057, at *4 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (per curiam) (mem. op., not designated for publication)). The types of prejudice inherent in any trial of joined counts include the risk of consecutive sentences; "that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime

charged but because of his prior or subsequent misdeeds"; and that "the jury may infer that because he committed some of the alleged crimes, he probably committed all of them." *See Llamas*, 12 S.W.3d at 471; *accord Casey v. State*, 349 S.W.3d 825, 832 (Tex. App.—El Paso 2011, pet. ref'd), *cited in Hodge*, 500 S.W.3d at 622–23.

We review a denial of a motion to sever for an abuse of discretion. *See Hodge*, 500 S.W.3d at 621. Under that standard, a court abuses its discretion only if its decision is so clearly wrong as to lie outside the zone of reasonable disagreement or is arbitrary or unreasonable. *Id.*

In the trial court, much of Diez's argument in his written motion to sever and in the presentation he made to the court during the oral hearing on the motion rests only on the types of prejudice that are inherent in any case in which felony counts are joined. *See id.* at 622. In fact, in both the motion and oral presentation, he relied on *Llamas* and its description of those types of prejudice. *See* 12 S.W.3d at 471. Those types do not suffice to make the "unfair prejudice" showing. *See Hodge*, 500 S.W.3d at 622.

Diez's other arguments on appeal under this issue cannot support reversal because they do not comport with the arguments that he made in the trial court.[7] *See* Tex. R. App.

---

[7] Those arguments are the following from his appellate briefing:

[R]eversal on abuse of discretion is an even higher hurdle for Appellant than harm analysis, but, relying on the arguments made in [Diez's appellate issues about the constitutionality of the statutory scheme, evidence sufficiency, admission of certain evidence, and requested jury-charge instructions], regarding especially the blurry and variable distinctions between mere nudity and child erotica images that are protected expression, and child pornography images, which . . . are not. The severance should have been granted as an exercise of that express discretion the trial court was given in §3[.]04, and the Court's statement that "that's what happens in every case of this matter" did not probe deeply enough to ensure that Appellant had a fair trial and would not be unfairly prejudiced by the joinder.

P. 33.1(a)(1); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

The trial court was within its discretion to deny the motion to sever. We overrule Diez's fifth issue.

## FUNDS FOR EXPERT UNDER *AKE*

In his sixth issue, Diez maintains that the trial court violated his rights as explained in *Ake v. Oklahoma* by not increasing the amount of funds that it made available to him for a cellphone forensic expert from $1,500 to $15,000. *See generally* 470 U.S. 68 (1985). This issue does not support reversal because Diez did not support his request for an increase to $15,000 with any evidence and did not present any motion on the topic to the trial court for a formal ruling.

Under *Ake*, "due process may require that an indigent defendant be granted access to expert assistance if 'the expert can aid which is "likely to be a significant factor" at trial.'" *Ex parte Jimenez*, 364 S.W.3d 866, 876 (Tex. Crim. App. 2012) (quoting *Ake*, 470 U.S. at 74). "The question in each case must be not what field of expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." *Rey v. State*, 897 S.W.2d 333, 337–38 (Tex. Crim. App. 1995) (quoting *Little v. Armontrout*, 835 F.2d 1240, 1243 (8th Cir. 1987) (en banc)).

Showing entitlement to relief under *Ake* requires adducing affidavits or other evidence to the trial court and presenting the *Ake* motion to the court for a formal ruling. An *Ake* claim "is a record-based claim—dependent upon a written motion and formal ruling—that must be made and resolved before the trial begins." *Ex parte Jimenez*, 364 S.W.3d at 881. The showing

21

that *Ake* calls for[8] requires more than "undeveloped assertions." *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985); *Ex parte Jimenez*, 364 S.W.3d at 881. It requires "appropriate affidavits or other evidence supporting [the] request for funding." *See Lumsden v. State*, 564 S.W.3d 858, 880 (Tex. App.—Fort Worth 2018, pet. ref'd); *see also Ex parte Jimenez*, 364 S.W.3d at 882 ("[A] trial judge does not err in denying an informal, off-the-record request for additional funding for experts when he is not presented with a written motion that contains affidavits or other evidence that would support the defendant's request.").

Here, Diez's written *Ake* motion for a cellphone forensic expert was granted and did not seek any specific amount of money. The court granted that motion, awarding him $1,500 for his requested expert. Over a year and two months after the award was announced, he told the court, during an oral hearing on other matters, that he instead needed $15,000. The court responded both that it needed "a specific showing that" $15,000 was necessary and that Diez needed to "file something" and have it set for hearing. The next month, again at a hearing set for other matters, Diez reiterated to the court his request for $15,000 and said that "the Court is unable or unwilling to give me more money." Yet Diez had attached no evidence to his written motion that the trial court had granted; filed no pre-trial written motion for the increased request to $15,000; and offered no evidence at either of the oral hearings to support his increased request (offering only unsworn oral argument). And though his appellate briefing relies in part on his motion for new trial, no evidence was attached to that motion to support the *Ake* request for $15,000.

We cannot reverse the trial court for refusing the increased request to $15,000 because Diez never adduced any evidence to support such a request, or indeed to support any *Ake*

---

[8] *See Ake v. Oklahoma*, 470 U.S. 68, 77 (1985) (announcing three factors that bear on the relevant due-process inquiry).

22

request at all, and never sought a formal ruling on any written motion that requested $15,000. *See Ex parte Jimenez*, 364 S.W.3d at 881–82; *Lumsden*, 564 S.W.3d at 879–80; *see also Pointe v. State*, 371 S.W.3d 527, 534 (Tex. App.—Beaumont 2012, no pet.) (overruling *Ake* appellate issue in part because appellant had failed to show need for expert by failing to "provide affidavits or other evidence to support his motion," offering only "defense counsel's undeveloped assertions that an expert was necessary"). We thus overrule his third issue.

### *BRADY* COMPLAINT ABOUT PERFORMING CERTAIN SEARCH ON CELLPHONE

In his seventh issue, Diez maintains that he was deprived of his constitutional rights under *Brady* because the prosecution did not provide him with the kind of cellphone forensic analysis that he wanted the expert to perform. He wanted the State to conduct an additional forensic search of his cellphone specifically to determine whether another party could have first accessed images there when he was incarcerated and thus unable to access the phone. We overrule this issue because we join with our sister courts who have concluded that *Brady* does not require searches for exculpatory material like Diez asks for even if the prosecution has access to the information on which the defendant wants the particular searches performed. *See In re State ex rel. Munk*, 448 S.W.3d 687, 692–93 (Tex. App.—Eastland 2014, orig. proceeding) (prosecution need not have performed search on database of criminal histories); *In re Watkins*, 369 S.W.3d 702, 706–07 (Tex. App.—Dallas 2012, orig. proceeding) (same); *see also Coleman v. State*, 577 S.W.3d 623, 634–35 (Tex. App.—Fort Worth 2019, no pet.) (similar conclusion, under Michael Morton Act); *cf. Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006) (stating that under *Brady*, "the state is not required to seek out exculpatory evidence independently on appellant's behalf").

### *BRADY* COMPLAINT ABOUT CELLPHONE'S CONTACTS LIST

In his eighth issue, Diez maintains that he was deprived of his *Brady* rights because the prosecution did not provide him his cellphone's contacts list so he could call witnesses to testify at trial. He gives as examples of the potential witnesses business customers and members of his religious community. Diez failed to preserve this issue for appellate review, via either his motion for new trial or his post-trial mention of the contacts list in open court.

*Brady* complaints are subject to error-preservation rules. *See Keeter v. State*, 175 S.W.3d 756, 759–61 (Tex. Crim. App. 2005). Even though such complaints are typically raised in a motion for new trial, a "defendant may not raise a matter for the first time in a motion for new trial if he had the opportunity to raise it at trial," *Colone v. State*, 573 S.W.3d 249, 260 (Tex. Crim. App. 2019).

Diez's *Brady* complaint depends on arguing that he could not call all the witnesses he wanted because the prosecution did not give him the contacts list. This is a complaint that he could have raised at trial. But he did nothing to raise the complaint at or before trial, including requesting no continuances based on the contacts list, until after he rested, the evidence closed, and the charge conference was over.[9] *See Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—

---

[9] In fact, his trial testimony included statements running counter to his position here. He testified that he had trouble finding people to testify on his behalf because they did not want to subject themselves to scrutiny, admitting that he had contacted some people:

> I contacted people to ask if they would testify and to come in and say, look, we're nudists, we're naturists, this is the way we believe, this is the way we do it and there's nothing wrong with these photographs; and I was told no, we don't want to expose ourselves.

This testimony undercuts his position that it was instead the lack of the contacts list that caused him not to be able to call witnesses.

San Antonio 2007, no pet.) (stating that request for continuance is one of the actions required to preserve a *Brady* claim). When the trial court asked him after he testified whether he had any more witnesses to call, he first responded that he wanted to call two witnesses who had not responded to his subpoenas and then responded that he had no more witnesses to call, omitting any mention of the contacts-list issue. His motion for new trial thus did not preserve the issue. Then after Diez rested, the evidence closed, and the charge conference was over, he mentioned in open court not having the contacts list and thus not being able to contact certain witnesses. But he secured no ruling from the court on the issue or refusal to rule to which he objected. *See* Tex. R. App. P. 33.1(a)(2). This mention in open court thus does not preserve the issue either, and we overrule his eighth issue.

## SUFFICIENCY OF THE EVIDENCE TO PROVE "LEWD EXHIBITION" AND SPECIFIC INTENT

In his ninth issue, Diez maintains that the evidence was insufficient to prove under either Count I or Count II (1) that he possessed visual material that depicted a "lewd exhibition" of the genitals or the female breast below the top of the areola and (2) the requisite specific intent. We overrule this issue because the evidence was sufficient.

In a criminal trial, the State must adduce "proof sufficient to persuade a rational trier of fact beyond a reasonable doubt of every fact necessary to constitute the offense." *Baltimore v. State*, __ S.W.3d __, 2024 WL 2307310, at *6 (Tex. Crim. App. May 22, 2024). "Evidence supporting a conviction is legally sufficient if a rational trier of fact could have found that the defendant committed each element of the offense beyond a reasonable doubt." *Id.* But a "mere modicum" of evidence is legally insufficient. *See id.* (quoting *McGinn v. State*, 961 S.W.2d 161, 168 (Tex. Crim. App. 1998)). Evidence-sufficiency review thus involves "not whether there was

*any* evidence to support a conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Id.*

In our review, we "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Id.* at *7. It is the factfinder's role to fairly resolve conflicts in the testimony; to weigh the evidence; to draw reasonable inferences from basic facts to ultimate facts; and to judge the credibility of witnesses, meaning that the factfinder may find credible all, some, or none of the testimony that any witness gives. *See id.*; *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). To preserve the factfinder's role, our review "may not substitute [ou]r judgment for that of the factfinder by re-evaluating the weight and credibility of the evidence." *See Baltimore*, 2024 WL 2307310, at *7. The factfinder may "draw reasonable inferences from the evidence presented at trial, so long as each inference is supported by the evidence produced at trial." *Id.* When drawing those inferences, it "may use common sense, common knowledge, personal experience, and observations from life." *Id.* But it may not "come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id.* On appeal, we "consider the cumulative force of all evidence to determine whether the evidence was sufficient to establish each element of the offense." *Id.*

We take the elements as they are "defined by a hypothetically correct jury charge" for the case. *Baltimore*, 2024 WL 2307310, at *7. "A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the

26

particular offense for which the defendant was tried." *Id.* "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Id.*

Diez's indictment alleges two counts of possession of child pornography, centering on two different items of visual material and alleging that for each Diez

> intentionally and knowingly possess[ed] visual material, namely, file name: [the respective image], that visually depicted, and which [he] knew visually depicted a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, namely actual lewd exhibition of the genitals or the female breast below the top of the areola.

(All-capitalization removed.) "Lewd exhibition" is, as we have seen, part of Texas law's definition of "sexual conduct." *See* Tex. Penal Code §§ 43.25(a)(2), 43.26(a)(1), (b)(2). The State sought to prove that each of the Count I and Count II images contained "lewd exhibition" because the State alleged only the lewd-exhibition component of the statutory "sexual conduct" definition. *See Baltimore*, 2024 WL 2307310, at *7; *Romo v. State*, 663 S.W.3d 716, 719 (Tex. Crim. App. 2022); *Bolles*, 541 S.W.3d at 138.

"[I]n assessing whether any rational trier of fact could have found the essential elements of the crime of possession of child pornography beyond a reasonable doubt, while we still assess the evidence in the light most favorable to the verdict, we conduct a *de novo* review to" decide whether the Count I and Count II images constitute child pornography. *See Bolles*, 541 S.W.3d at 134; *accord Romo*, 663 S.W.3d at 719. "Whether an image falls within the statutorily defined category of child pornography under Texas state law is a question that must be answered on a case by case basis." *Bolles*, 541 S.W.3d at 143.

Although some courts have assessed whether an image contains lewd exhibition by applying the "*Dost* factors," *see Romo*, 663 S.W.3d at 719–22 (applying *United States v. Dost*,

27

636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)); *Bolles*, 541 S.W.3d at 140, 143–44 (same), those factors are not binding, "serv[ing] only as a guide," *Bolles*, 541 S.W.3d at 143. They "do not define the term 'lewd exhibition.'" *Id.* at 142–43. Instead, lewd exhibition may be "interpreted by a trier of fact using any meaning which is acceptable in common parlance." *Id.* at 143. The Court of Criminal Appeals, echoing Justice Potter Stewart, thus said of child pornography, "[W]e know it when we see it." *Id.* at 143 & n.77 (citing *Jacobells v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring)).

As for the requisite specific intent, the statute requires the State to prove that "the person knows that the material depicts the child as described by Subdivision (1)," and Subdivision (1) provides for an offense if "the person knowingly or intentionally possesses . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct." Tex. Penal Code § 43.26(a)(1)–(2).

Turning to the evidence here, we note that the two indicted images were admitted into evidence as State's exhibits 72 and 73. Exhibit 72 shows a child lying on a couch or bed with a small scarf covering part of her midsection but with her pubic area and breast unclothed, exposing the latter body part's portion below the top of the areola. Exhibit 73 shows a nude child indoors posing for the camera with, as a law-enforcement forensic technician described it, her legs partially spread and "[h]er areola and labia majora . . . exposed and the focal point of the image." These unclothed portions of the children's bodies are focal points of each respective image. *See Romo*, 663 S.W.3d at 719 (requiring *de novo* review of image at issue); *Bolles*, 541 S.W.3d at 134 (same).

28

Both the images themselves and other evidence allowed the jury to conclude beyond a reasonable doubt that (a) Exhibit 72 and Exhibit 73 are images of lewd exhibitions of the depicted child's genitals or breast below the top of the areola and (b) that Diez had the requisite specific intent. Among that other evidence was testimony about Diez's explanation for why he had the images, including from Diez himself. The testimony reasonably can be viewed as his admissions that the images contain lewd exhibitions, couched inside an otherwise non-credible explanation, and that he knew what they depicted. *See Baltimore*, 2024 WL 2307310, at *7 (factfinder may rely on reasonable inferences and reviewing court considers cumulative force of all evidence to decide sufficiency); *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016) (factfinder may assemble overall picture created by pieces of evidence like jigsaw puzzle).

Diez testified that he receives naturist–nudist images of children via the internet. Although he testified that he believes many of the images are not child pornography, he also testified that other of the images *are* child pornography and that when he receives them, he saves them so he can give them to the FBI.[10] The jury was within its rights to believe Diez about saving child-pornography images but disbelieve his story about why he does so and resolve any contradictions in the evidence against him.[11] *See Romano*, 610 S.W.3d at 34. He, according to the evidence, had told the same FBI story in an interview with law enforcement. Concerning that

---

[10] Diez added in closing argument, "You've heard testimony that whenever I found child pornography and the like that I have turned evidence of that over to the police."

[11] Diez offered a name for his supposed long-time FBI contact. But, according to the evidence, when law enforcement contacted the FBI to try to find any FBI personnel who had that name, the person whose name most closely matched the one that Diez offered said that he had no knowledge of Diez and had never worked with him.

interview, an officer testified that Diez said that in his "experience he was able to determine, or at least in his mind, quite handily what child pornography is."

In this context, Diez gave testimony that reasonably could be seen as admissions that Exhibit 72 and Exhibit 73 contain lewd exhibition of certain unclothed body parts of children and that he knew what the images depicted. He testified that after he received the two images, he passed them on to his FBI contact for an opinion. Purportedly, the contact responded that the images could be considered lewd in Texas or other jurisdictions. The jury after hearing this testimony and drawing reasonable inferences from all the evidence could conclude beyond a reasonable doubt that Diez was admitting that he had visual material depicting a lewd exhibition of the subject children's genitals or breast below the top of the areola and that he knew what the material depicted. He just dressed the admissions up, the jury reasonably could have concluded, in the untrue FBI story.

All this is sufficient. The images, officers' testimony about what they showed and about what Diez said, and Diez's admissions sufficed to prove beyond a reasonable doubt that Exhibit 72 and Exhibit 73 depict the necessary lewd exhibitions and that he had the requisite specific intent. *See Baltimore*, 2024 WL 2307310, at *6–7; *Bolles*, 541 S.W.3d at 143; *see also Bolles*, 541 S.W.3d at 136 & n.28 (citing with approval case in which images' "focus on the girls' pubic area" helped to show unlawful "inappropriate or lascivious focus" of images (citing *United States v. Brown*, 579 F.3d 672, 681 (6th Cir. 2009))). We thus overrule Diez's ninth issue.

30

## EVIDENCE ADMISSION

In his tenth issue, Diez maintains that the trial court abused its discretion by admitting into evidence State's exhibits 58–61, 62–71, and 74–80. The three sets of exhibits are images recovered from three different sources found in Diez's home.

The State argues that Diez's complaints were not preserved for appellate review, or at least do not support reversal, for differing reasons for each of the three sets of exhibits. We agree with the State.

### *Exhibits 58–61*

Exhibits 58–61 were recovered from a cellphone that was itself otherwise admitted into evidence as State's exhibit 2. When the State offered Exhibit 2 into evidence, Diez responded that he was not going to object, and when the State offered Exhibits 58–61, Diez responded that he had no objection. He thus has not preserved any complaint about these exhibits' admission. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1). His only response on this preservation point is that he preserved his objection by objecting the next day of trial, after the State's offer of Exhibits 82 and 83. This objection was too late to preserve any challenge to Exhibits 58–61. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

### *Exhibits 62–71*

Exhibits 62–71 were recovered from a different cellphone found in Diez's home, and this phone was itself admitted into evidence as State's exhibit 3. Diez objected to Exhibit 3 and Exhibits 62–71 on grounds that the images were irrelevant and "not illegal" and that "some of them [he had] never even seen before." But on appeal, his complaints are that the exhibits should have been excluded under Rules of Evidence 403 and 404(b). Because these complaints do not

comport with his trial-court objections, the complaints are not preserved for review. *See Yazdchi*, 428 S.W.3d at 844; *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). The objection the next day after the State's offer of Exhibits 82 and 83 did not preserve this complaint either. *See Ethington*, 819 S.W.2d at 858.

### *Exhibits 74–80*

Exhibits 74–80 were recovered from a CD in Diez's home, and the CD was already admitted into evidence as State's exhibit 4. Although Diez objected to Exhibits 74–80 when they were offered, Exhibit 4 had been admitted the previous day of trial without objection. Because the exhibits about which Diez complains were otherwise admitted into evidence without objection, this appellate complaint does not support reversal. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). We overrule his tenth issue.

## JURY CHARGE

Diez's eleventh, twelfth, and thirteenth issues are jury-charge complaints. He argues that the trial court erred by denying instructions on mistake of fact, *see* Tex. Penal Code § 8.02(a), and mistake of law, *see id.* § 8.03(b). And he argues that the court should have given an instruction about his alleged naturism–nudism religious beliefs.

We review a complaint of charge error under a two-step framework. *Harmel v. State*, 597 S.W.3d 943, 956 (Tex. App.—Austin 2020, no pet.); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We first decide whether the claimed error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Harmel*, 597 S.W.3d at 956. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

Second, if there is error, we evaluate the harm caused by the error. *Ngo*, 175 S.W.3d at 743; *Harmel*, 597 S.W.3d at 956. The amount of harm needed for reversal depends on whether the defendant preserved the error. *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If the defendant preserved the error, then review is simply for "some harm." *Maciel v. State*, __ S.W.3d __, 2024 WL 2742956, at*4 (Tex. Crim. App. May 29, 2024).

A trial court must instruct the jury on the "law applicable to the case." Tex. Code Crim. Proc. art. 36.14. "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." Tex. Penal Code § 2.03(c). So too with affirmative defenses. *See id.* § 2.04(c).

The evidence raises a defensive issue only "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). "In determining whether a defense is thus supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id.* at 658. "A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense." *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.—Austin 2005, no pet.). A defendant's mistaken belief that his conduct was lawful is not a mistake of fact for purposes of this defense. *Plummer v. State*, 426 S.W.3d 122, 128 (Tex. App.—Houston [1st Dist.] 2012), *aff'd as modified*, 410 S.W.3d 855 (Tex. Crim. App. 2013). "When reviewing a trial court's refusal of a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested instruction." *Maciel v. State*, 631 S.W.3d 720, 722 (Tex. Crim. App. 2021).

*Mistake of Fact*

Diez requested a mistake-of-fact instruction, claiming that naturists and nudists, such as himself, have religious beliefs that make it difficult to determine when naked pictures of children are or are not child pornography. More specifically, when arguing for a mistake of fact instruction, the following exchange occurred:

> State: [W]e haven't heard any evidence of what the fact was that Mr. Diez was mistaken about. He's just testified and through cross-examination argued that this conduct was lawful because he's a naturalist or nudist.

> Diez: Your Honor, I believe that I did testify as to the difficulty that we as naturists and nudists have in determining what pictures are and are not because we don't know what any given . . . person in clothed society . . . will determine . . . from their perspective to be a lewd exhibition.

Nothing in Appellant's request was a clear statement of the "specific historical fact" about which he was allegedly mistaken. *See Mays v. State*, 318 S.W.3d 368, 382 (Tex. Crim. App. 2010).

On appeal, he argues that the fact about which he was mistaken was that "if the images were unlawful, he sincerely did not believe they were unlawful." However, as noted above, a defendant's mistaken belief that his conduct was lawful is not a mistake of fact for purposes of raising the affirmative defense. *See Plummer*, 426 S.W.3d at 128. Because his purported mistaken belief is not a mistake of fact for purposes of raising the affirmative defense, the trial court did not err by refusing the instruction.

We thus overrule his eleventh issue.

*Mistake of Law*

Diez's twelfth issue asserts error in the refusal of his requested mistake-of-law defense. But no evidence raised that defense, so the court did not err by refusing it.

34

Mistake of law is an affirmative defense, so a defendant seeking to raise it bears a burden to produce evidence to support it. *See* Tex. Penal Code §§ 2.04(a), (c), 8.03(b). Here, no evidence supported the defense because the evidence was to the effect that Diez knows what the law requires—mere child nudity is not illegal, while lewd exhibitions are illegal as child pornography—but has trouble determining whether certain images fall on this side of or beyond the law's line. The evidence, in the language of the mistake-of-law statute, was not that he reasonably believed that "the conduct charged" did not amount to a crime. *See id.* § 8.03(b). He was indicted for possessing visual material that contains lewd exhibitions of certain unclothed body parts of children and that he had the requisite specific intent. Diez knew that such lewd exhibitions are illegal to possess; he just thought that his images were not lewd exhibitions.

The testimony of his that he relies on in his appellant's brief makes this point. That testimony began by referring to the line separating mere child nudity from lewd exhibition as a gray area. He testified that he and his co-religionists stay up to date "on case law and legal treatises . . . so we can counsel our congregation *as to what photographs*" are legal and which are not. (Emphasis added.) He complained that it is difficult to know where certain images might fall, on this side of or beyond the line, leading to his making "mistake[s]" or "miscall[s]." He summed up his testimony by explaining that he did not believe that Exhibits 72 and 73 were child pornography because the images would not have been illegal if the children were clothed, and their lack of clothes was merely an expression of his naturist–nudist religious beliefs.

This is not a mistake of law over "the conduct charged." *See id.* The evidence established that Diez knew that child lewd exhibitions are illegal. He testified that his FBI friend told him that the images at issue might be considered lewd in Texas or elsewhere. Then at the charge conference, he requested an instruction on a lesser included offense *based on the images'*

35

*being lewd.* Both his theory at trial and the evidence supported the notion that *he knows what the law is—possessing child lewd exhibitions is illegal.* He thus knew that "the conduct charged" was criminal. *See id.* His asserted mistake was not knowing whether he had committed that conduct.

Because the evidence did not raise mistake of law, the trial court did not err by refusing the instruction. *See Sparkman v. State*, 968 S.W.2d 373, 379 (Tex. App.—Tyler 1997, pet. ref'd) ("These allegations might favor an instruction regarding a mistake of fact, as the trial court allowed, but they do not suffice for a mistake of law instruction."); *Hefner v. State*, 735 S.W.2d 608, 625 (Tex. App.—Dallas 1987, pet. ref'd) (mistake-of-law instruction inappropriate when defendant's asserted legal authorities could not have given rise to reasonable belief that charged conduct was legal), *overruled on other grounds*, *Campbell v. State*, 5 S.W.3d 693, 701 (Tex. Crim. App. 1999). We thus overrule his twelfth issue.

### Requested instruction on alleged naturist–nudist beliefs

Diez in his thirteenth issue maintains that the trial court should have instructed the jury that, as Diez said in the charge conference, "they can consider" Exhibits 72 and 73 "from the nudist/naturist perspective, rather than from that of clothed society." But the court's charge followed the statutory language defining the offense, and Diez's requested instruction both was not statutory language and would have focused the jury's attention on a specific type of evidence, that is, his testimony about why his naturist–nudist beliefs meant that he did not possess child pornography. *See Beltran De La Torre v. State*, 583 S.W.3d 613, 617–18 (Tex. Crim. App. 2019). The court's charge gave the jury the required freedom to assign undefined statutory terms "any meaning which is acceptable in common parlance." *See Kirsch*, 357 S.W.3d at 652 (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *see also Bolles*, 541 S.W.3d at 143

("The term 'lewd exhibition' is capable of being interpreted by a trier of fact using any meaning which is acceptable in common parlance."). But Diez's requested instruction would have tended to restrict the jury from considering the relevant terms "in common parlance" and would have instead prompted them to consider the terms only from the alleged naturist–nudist perspective. The trial court thus did not err by refusing the instruction. We thus overrule his thirteenth issue.

## CONSECUTIVE SENTENCES AND THE EIGHTH AMENDMENT

In his fourteenth issue, Diez maintains that the trial court's ordering his two sentences to run consecutively violates the Eighth Amendment's ban on cruel and unusual punishment. This issue was not preserved. Eighth Amendment claims like these are subject to the preservation rules and if not preserved are forfeited. *See Williams v. State*, 191 S.W.3d 242, 262 (Tex. App.—Austin 2006, no pet.); *Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Those rules require a timely and reasonably specific objection to preserve such an issue, so because Diez's only effort at a timely objection to the stacking of his sentences was an objection that stated no basis, he forfeited this issue for appellate review, and it is overruled. *See Ham v. State*, 355 S.W.3d 819, 825 (Tex. App.—Amarillo 2011, pet. ref'd); *Jacoby*, 227 S.W.3d at 130; *Cruz v. State*, 838 S.W.2d 682, 687 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

## MISCELLANEOUS UNBRIEFED COMPLAINTS

Diez's briefing arguably states two more complaints—that "the Court failed to give [Diez] the same opportunity for . . . access" to legal research while he was incarcerated pre-trial and that the court "ignored his requests to enforce subpoenas against Pinterest." Because neither

of these issues is supported by any citations to legal authorities, these issues are forfeited for inadequate briefing.  *See* Tex. R. App. P. 38.1(i).

## CUMULATIVE HARM

Diez's final issue is that the cumulative effect of all the errors that he has alleged requires reversal even if none of the alleged errors individually require reversal.  We have seen no preserved error here; therefore, there is no cumulative harm.  *See Ruffins v. State*, __ S.W.3d __, 2024 WL 1867160, at *15 (Tex. App.—Austin Apr. 30, 2024, no pet.).

## CONCLUSION

We affirm the trial court's judgments.[12]

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   June 28, 2024

Publish

---

[12] Because of the rule against hybrid representation, we do not include analysis of the issues that Diez raises in several *pro se* letters that he has filed beyond his appellate counsel's briefing.  *See Marshall v. State*, 210 S.W.3d 618, 620 n.1 (Tex. Crim. App. 2006); *Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004).  But in the interest of justice, we have reviewed the *pro se* letters and conclude that the issues that they raise are without merit.  *See Flores v. State*, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993).